RYAN BROS. v. ASHTON.

1. **Attorney:** DUTY TO CLIENT: CONTRACT. An attorney who is about to enter into a contract with another outside of the ordinary course of business for compensation for legal services to be rendered for the latter, is bound to inform him of all the facts and circumstances attending the subject of the controversy.

2. ———: FRAUD: PLEADING. If such a contract be made without such information being given it is presumptively fraudulent, and the attorney seeking to recover thereon must state facts sufficient to remove the presumption of fraud.

3. ———: CONTRACT: FRAUD. A. resided in Iowa where his estate was situated; his wife and children in Illinois. After his death R., an attorney residing in the same county as A., went to Illinois and entered into a contract with the heirs at law, in accordance with which he was to receive twenty-five per cent of the value of the estate for its settlement. No litigation was involved therein and the debts of the estate, which amounted to twelve thousand dollars, were small: *Held*, that such a contract was fraudulent and could not be enforced.

*Appeal from Jasper District Court.*

WEDNESDAY, MARCH 22.

ACTION for specific performance. The petition states that James Ashton departed this life intestate, on the 27th day of September, A. D. 1873, leaving as his heirs-at-law the

defendant, Hannah Ashton, his widow, and her two children, William Ashton and Margaret Tulley, and two children by a previous wife, and that on the 30th day of September, A. D. 1873, the following agreement was entered into between the plaintiffs and Hannah and William Ashton:

"MATTOON, Ill., Sept. 30, 1873.

"We hereby acknowledge having this day employed Ryan Bros., of Newton, Jasper county, Iowa, as our attorneys at law to do all things necessary in the settlement, prosecution and collection of the interests of Hannah Ashton, William Ashton and Margaret Tulley, in and to the estate of James Ashton, deceased, late of Jasper county, Iowa, for which services we agree to pay them one-third of the net proceeds of said estate which may be adjudged to be the shares of said parties aforesaid, when collected, together with the further sum of three hundred dollars, provided that sum is collected for the parties from the estate, and in the event nothing is collected, then said Ryan Bros. are to receive nothing for their services.

Witness, } D. RYAN, 　　　　WILLIAM ASHTON,
　　　　　  } W. ASHTON. 　　　　　　her
　　　　　　　　　　　　　　　HANNAH ✕ ASHTON."
　　　　　　　　　　　　　　　　　　　　mark.

It is also stated that James Ashton separated from his wife about the year A. D. 1852, in Illinois and came to said Jasper county, and at the time of his decease, was possessed of a large amount of real and personal property of the value of from ten to twelve thousand dollars, besides the dower interest of said Hannah in lands conveyed by said James Ashton to the children by his first wife, and also that he owned certain lands in Illinois the value of which is not stated.

That on the .... day of October, A. D. 1873, one of the plaintiffs, D. Ryan, in conjunction with said Hannah, was appointed joint administrator of said estate, the same being done at the request of said Hannah; the sureties on the bond however, being furnished or procured by said plaintiffs, and on the .... day of October said Hannah came to Newton,

Iowa, and signed the bond procured by plaintiffs and quali-fied as administratrix of said estate.

That on the 30th day of said October, said Hannah gave another bond as administratrix, and has thereunder and thereby obtained the possession and control of all the prop-erty of said estate, except the sum of five hundred and eighty-five and 43-100 dollars, which is in possession of said D. Ryan as co-administrator with said Hannah Ashton. That said Hannah claims control of the said assets in her posses-sion as sole administratrix. That plaintiffs have repeatedly offered to perform the said agreement on their part, but that said Hannah has refused to recognize them or said agreement. That said James Ashton was not indebted more than three hundred dollars, and that all there is to do is to make the distribution among the heirs. That said Hannah, William Ashton and Margaret Tulley are non-residents of the State and propose to remove said assets out of the State. An injunc-tion and accounting is asked, and also for general relief. A demurrer having been sustained to the petition, the plaintiffs appeal.

*Ryan Bros.*, for appellants.

There is no such thing recognized by the courts of this State as champerty or maintenance. (*Wright v. Meek*, 3 G. Greene, 482.) An agreement for a contingent fee is a valid contract between attorney and client. (*McDonald v. C. & N. W. R. Co.*, 29 Iowa, 173.) Fraud must be clearly estab-lished; the exception to the rule being that where a trust rela-tion exists, as in the case of attorney and client, the attorney must show that a contract with the latter is free from fraud. (Hill on Trustees, 160; *Muller v. Wells*, 23 Conn., 21; 1 Story, Eq. Jur., § 310.) Plaintiffs' authority under the contract, even if it be considered as executory, is coupled with an interest and therefore not revocable. (*Ryan v. Martin*, 18 Wis., 672; 1 Pars. on Con., p. 69; *McGregor v. Gardner*, 14 Iowa, 326.) A person may not discharge his employe at any time and thus release himself from liability under his contract. (*Allen, Noyes & Co. v. Pelan & Anderson*, 5 Iowa, 336.)

*Winslow & Wilson*, for appellee.

It is not necessary to the idea of champerty that the alleged champertor is to carry on the suit at his own expense. (*Lathrop v. Amherst Bank*, 9 Met., 489.) Champertous agreements are against the law and morals. (*Coquillard's Admr. v. Bearss*, 21 Ind., 479.) The law against champerty, though somewhat relaxed, is still a substantial part of the common law. (*Barker v. Barker*, 14 Wis., 131; see, also, *Marshall v. B. & O. R. Co.*, 16 How., 325; *Lafferty v. July*, 22 Ind., 471; *Martin v. Veeder*, 20 Wis., 466; *Byrd v. Adem*, 9 Ala., 755; *Evans v. Bell*, 6 Dana, 479; *Thurston v. Percival*, 1 Pick., 415.) Where a contract is made between attorney and client in respect of compensation, that relation and the contract came into existence together. (*White v. Whaley*, 40 How. Pr., 353.) Contracts which courts would not regard as unfair dealing between other parties will frequently not be sustained as between attorney and client. (*Harper v. Perry*, 28 Iowa, 57.) Specific performance will not be decreed as a matter of right, but only in the exercise of a sound legal discretion. (*Quinn v. Roath*, 37 Conn., 16; *Sherman v. Wright*, 49 N. Y., 227.) Defendants at any time had the right to discharge their attorneys, thus ending the contract of employment, although liable therefor if not done for good and sufficient reason. (*Wells v. Hatch*, 43 N. H., 246.)

SEEVERS, CH. J.—The dower interest of Hannah Ashton in the lands in Jasper county is shown to be worth about twelve hundred dollars, and excluding the land in Illinois the value of her interest and that of her two children in the estate will be from eight to nine thousand dollars. The plaintiffs' compensation will therefore be from twenty-five hundred to three thousand dollars. It does not appear that there were any difficulties in the way of having their distributive share in the estate allotted to them, nor does it appear there was any difficulty or great amount of legal skill or business knowledge required to settle and adjust the estate. On the

contrary it is sufficiently shown that the debts were small and the estate easily settled and adjusted. In a word, there were no doubtful questions or litigation known or expected by the plaintiffs, at least at the time the agreement was made. Viewed in the light of these circumstances it cannot be supposed, if the defendants had been fully informed, that they ever would have agreed to any such contract. Persons do not ordinarily so contract. Self interest dictates otherwise, in the protection of which it is to be presumed every one intends or supposes he is acting with ordinary care and diligence, when entering into contracts which so vitally affect him as in this case. It must strike the mind of every one, at the first glance, that the defendants were either ignorant, imbecile or not fully informed of their rights. That Hannah Ashton was ignorant is evidenced by her being unable to write her name, but this alone is not sufficient to justify the repudiation of the contract; it is, however, a circumstance entitled to consideration. The main and controlling question is, were the plaintiffs, at the time of making the contract, bound in good faith to have communicated all the facts and circumstances within their knowledge to the defendants before the contract was fully executed, so that an intelligent opinion could be formed as to the propriety of entering into the contract. This must in our opinion be answered in the affirmative.

James Ashton died on the 27th day of September, A. D. 1873, at Jasper county, Iowa, and on the third day thereafter this contract was entered into at Mattoon, Illinois. No explanation is given how or why the plaintiffs happened to be in Mattoon so soon after Ashton's death, in consultation with these heirs. The conclusion is irresistible that they went there for the purpose of obtaining this or some other contract, or for the purpose of gain and profit in some way, and the result points with great significance to the object and purpose. If Mrs. Ashton had come to Newton and employed the plaintiffs as her attorneys to take charge of her interests in the estate, there would then be no doubt but that the relation of attorney and client existed.

Now, if the attorney visits the client for the purpose of being employed, that is contracting to be employed, is it not just as clearly his duty before making such a contract as this, to distinctly and clearly advise the client of all the facts and circumstances connected with the estate? In our opinion such is clearly his duty. If possible it is stronger in the latter than in the former case. In the one he is passive, in the other active, and he seeks the employment. The more reason, therefore that he should fully inform the person whom he seeks to have become his client of all the facts and circumstances before making such a contract as the one sued on. The contract, therefore, is presumptively fraudulent, and the plaintiffs should have stated facts in their petition sufficient to remove this presumption. If the relation of attorney and client existed at the time this contract was entered into, we understand plaintiffs to substantially concede the contract to be void. Hence no citation of authorities is made out of the many that might be. See, however, Greenfield's Estate, 14 Penn. St., 489, which seems to us to fully sustain the views herein expressed.

*1. ATTORNEY: duty to client: contract.*

It may, however, be said that the plaintiffs had no knowledge of the value of the estate, or of the difficulty, if any, in having the interests of the defendants allotted to them, which the defendants did not know equally well. It is difficult to see how this could be, when the defendants had been living separate and distant from the deceased for more than twenty years, while the plaintiffs resided in the same county. But if this was so it should have been stated in the petition.

AFFIRMED.