**No. 27965**

**The People of the State of Colorado v. Duncan J. Cameron**

(595 P.2d 677)

Decided March 26, 1979.

Robert B. Kane, Special Prosecutor, for complainant.

John R. Griffith, for attorney-respondent.

*En Banc.*

MR. JUSTICE ROVIRA delivered the opinion of the Court.

The Supreme Court Grievance Committee recommended that the respondent Duncan J. Cameron, be suspended from the practice of law for six months and that he be assessed the costs of the disciplinary proceeding.

The findings and conclusions of the Grievance Committee support its recommendation and reflect the following activities of the respondent.

In June 1970 the respondent was retained by Paul Austgen and Nancy Austgen to handle their mother's estate. Pursuant to the laws then in effect, the personal representative of the estate was required to file an estate tax return within fifteen months following decedent's death. The estate tax return should have been filed by June 2, 1971, but the respondent advised his client that there was no reason to file a return until all matters in litigation had been resolved. No return was filed on the due date, and the respondent did not seek an extension of time within which to file a return.

As a result of other differences with his client concerning certain gifts made by decedent to her children, the respondent ceased his representation but did not deliver the estate file to the Austgens until almost a year after the return was due.

In June 1972 the Austgens retained an attorney and certified public accountant to prepare a federal estate tax return and to represent them in their negotiations with the Internal Revenue Service. After extensive negotiations, penalties for late filing were waived, but the estate was required to pay interest on account of the failure to pay the tax when due.

In October 1970 the respondent organized a corporation known as Colorado State Securities, Inc. The principal purpose of this company was to act as a brokerage firm to sell stock in corporations which were not large enough to attract national attention.

On October 27, 1970, the respondent conveyed his personal residence to the corporation in exchange for 16,000 shares of common stock in the company, and in March of 1971, 2,000 shares of stock in the company were transferred to Paul Austgen for $2,000. The evidence is in dispute as to whether the $2,000 was to purchase stock or was a loan to the respondent. In either event, the respondent gave Mr. Austgen a promissory note for $2,000, which was to assure Mr. Austgen that his money would be returned to him if the corporation failed, or was to repay Mr. Austgen for a loan of $2,000.

The promissory note was prepared by respondent and did not include a provision for attorney's fees in event of default or for an increase in interest after maturity of the note.

The sole asset in the corporation was respondent's residence which was described on a balance sheet pertaining to the corporation dated October 31, 1970, as "land and improvements (rental property)."

During the period that the residence was owned by the corporation, no rental payments were made by the respondent for living in his residence, although he continued to make mortgage payments out of his own funds.

On November 15, 1971, without consent of the shareholders or any shareholders' meeting and without Mr. Austgen's knowledge, the corporation conveyed the residence to respondent's wife notwithstanding the fact that it was the sole asset of the corporation. Such sale constituted a violation of the provisions of section 7-5-112, C.R.S. 1973 (1978 Supp.), in that the sale, exchange or lease of the principal part of the assets of a corporation may only be effected upon the vote of two-thirds of the outstanding authorized shares of the corporation entitled to vote thereon. Furthermore, the transfer was without consideration since no payment was made to the corporation by respondent's wife at the time the property was transferred to her.

In October 1972 the corporation was declared defunct by the Secretary of State of Colorado, and no part of Mr. Austgen's initial investment was then or subsequently returned to him by the respondent.

In May 1974 Mr. Austgen filed suit against the respondent in the Denver District Court for the amount of the promissory note. The

respondent answered and denied all the allegations of the complaint. He later admitted at the Grievance Committee hearing that the sole reason for such denial was to obtain additional time in which to raise money to pay Mr. Austgen. In addition, the respondent in the proceedings in the district court, answered certain interrogatories and stated that although no payment had been made by him on account of the note, he "gave him [Austgen] legal services far in excess of the amount of the note." At the hearing before the Grievance Committee, the respondent testified that he had been paid in full for all legal services and that Mr. Austgen did not in fact owe him any money for any legal services and admitted that his answer to the interrogatory was misleading.

Respondent's explanation for his neglect to insert a clause in the promissory note pertaining to attorney's fees or increasing the interest rate upon default was that he had not anticipated that the note would ever go into default.

Mr. Austgen ultimately obtained a judgment against the respondent in the amount of $2,000 but was not granted attorney's fees because of the fact that fees were not provided for in the note. The $2,000 judgment remains unpaid as of this date.

■ The failure of the respondent to file a federal estate tax return and not to obtain an extension of time was a clear violation of Disciplinary Rule 6-101(A)(3), which provides that a lawyer shall not neglect a legal matter entrusted to him.

■ The respondent's action in conveying the sole asset of the corporation out of the corporation to his wife for no consideration was a dishonest act which effectively deprived the stockholders of their right to share in the sole asset of the corporation upon its insolvency or dissolution and was a violation of Disciplinary Rule 1-102(A)(4), which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

■ The respondent's conduct in preparing the promissory note to Mr. Austgen was a violation of Disciplinary Rule 5-104(A), which provides that a lawyer shall not enter into a business transaction with a client if they have differing interests unless the client has consented after full disclosure. There is no evidence to suggest that Mr. Austgen consented to respondent's preparing a promissory note which contained no provision for attorney's fees nor increase in the amount of interest in the event of default on the note.

The Grievance Committee concluded that the respondent: (1) made misleading statements in his answers to interrogatories; (2) forced Mr. Austgen to hire separate counsel to bring suit on the promissory note when he knew full well that there was no valid defense to the action; (3) has refused to pay the amount of the judgment on the promissory note; and (4) misleadingly listed his private residence as rental property on the balance

334

sheets pertaining to the corporation. All these conclusions are supported by evidence in the record.

■ The respondent has engaged in conduct which violates the Code of Professional Responsibility and accepted rules or standards of legal ethics.

The respondent, Duncan J. Cameron, is suspended from the practice of law for six months from the announcement of this opinion and is assessed costs in the amount of $147.03 to be paid within sixty days.