## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. GERALD CULLEN BAKER

[Misc. Docket (Subtitle BV) No. 25, September Term, 1978.]

*Decided April 24, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Robert A. Diemer* for respondent.

*James A. Frost, Assistant Bar Counsel,* for petitioner.

PER CURIAM:

The Attorney Grievance Commission, through Bar Counsel, filed a petition for disciplinary action against Gerald Cullen Baker, alleging violations of the Disciplinary Rules of the Code of Professional Responsibility. We referred the matter to Judge Albert T. Blackwell of the Circuit Court for Prince George's County to make findings of fact and conclusions of law pursuant to Maryland Rule BV9. After conducting an

evidentiary hearing, Judge Blackwell filed a memorandum setting forth his findings as follows:

"FINDINGS OF FACT

"The Respondent, Gerald Cullen Baker, was admitted as a member of the Bar of the State of Maryland on May 14, 1970, and at the present time maintains an office for the practice of law at 5900 Princess Garden Parkway in Lanham, Maryland. During the period in which the disputed transaction took place, the Respondent maintained his law office in Clinton, Maryland on Woodyard Road. In 1972 Mr. Baker represented one Pearl G. Sheppard in her effort to obtain a divorce and to reach a property settlement with her husband. After Mr. Baker informed her of the opportunity, in July of 1972 Mrs. Sheppard made a $5,000 loan to Pathology Consultants, Inc., and was repaid the principal in full along with twenty percent (20%) interest on February 1, 1973. Subsequent to the Pathology loan, Mr. Baker informed Mrs. Sheppard of a similar opportunity whereby she could make another high risk loan with high interest potential to Starflight Development, Inc. (hereinafter referred to as 'Starflight'), a corporation engaged in the residential construction business. At the time Mr. Baker informed Mrs. Sheppard of the opportunity to make a loan to Starflight, and at all subsequent times relevant to these proceedings, the Respondent was Secretary and counsel to Starflight and owned ten percent (10%) of the outstanding shares of stock of that corporation. While Mr. Baker testified before this Court that he advised Mrs. Sheppard that he was 'involved' in Starflight, he admitted that he never told her that he was a 10% owner and Secretary of the corporation. Mr. Baker did testify that he revealed to Mrs. Sheppard that he was counsel for Starflight; it was the testimony of Mrs. Sheppard that she did not recall if the Respondent ever did tell her of the fact that he was Starflight's attorney. On November 4, 1972 Mrs. Sheppard executed and the Respondent accepted in writing an assignment of two thousand five hundred dollars ($2,500), whereby Gerald Baker would act as an agent for the specific purpose of transferring funds from her personal account to

Starflight through the Respondent's personal escrow account. Mr. Baker drew a check on his escrow account to Starflight and delivered to the company $2,000 of the funds of Mrs. Sheppard which he held by virtue of the October 4 assignment. Later on November 20, the Respondent, after conducting a settlement of a sale of property for Mrs. Sheppard, credited some five hundred dollars ($500) of the settlement proceeds to Starflight. Thus the total amount of Mrs. Sheppard's loan to Starflight amounted to $2,500. On November 10, 1972 Starflight, by its President Rufus W. Jones, Jr., executed a promissory note to the Respondent as agent for an undisclosed principal; the undisclosed principal being Mrs. Sheppard by virtue of the prior assignment of November 4, 1972. Mr. Baker drafted Starflight's note to Mrs. Sheppard which provided for the payment of $2,750 within ninety days of the execution of the note with an option to extend the repayment period for ninety more days subject to an additional $250 fee. However, the note failed to provide for an increase in the amount due Mrs. Sheppard from Starflight should the principal amount remain unpaid for more than one hundred and eighty days. The result of the manner in which the Respondent drafted the aforesaid note was that from the time Starflight's obligation on the note went into default on May 10, 1973 to the present, the amount due Mrs. Sheppard was neither increased by the statutory interest rate nor by any other amount.

"Contrary to the terms of the November 4, 1972 assignment, Mr. Baker failed to secure Starflight's note to Mrs. Sheppard with one 'Wham-T-Form' as collateral. Both in his pleadings and testimony at the hearing, the Respondent explained his failure to obtain the promised security. According to the Respondent, Wham-T-Inc. breached its contract to provide workable concrete forms, and until the resolution of Starflight's suit against Wham-T-Inc. in the United States District Court for the District of Columbia, Mrs. Sheppard could not be provided with the promised security interest in the concrete form.

"As indicated above Starflight's obligation on the note went into default on May 10, 1973. It was not until March 18, 1976

that Mrs. Sheppard was provided with a copy of the Starflight note. Following Starflight's default on the note, Mrs. Sheppard, who had moved and was living in Ocala, Florida, initiated a series of telephone conversations with the Respondent during 1973, 1974, and 1975. To date Starflight has neither tendered nor made any payments on its obligation to Mrs. Sheppard.

"CONCLUSION OF LAW

"The Assistant Bar Counsel conceded at the conclusion of the hearing that certain violations charged in the Petition were not applicable. Accordingly, the Court concludes that the Respondent's actions did not involve a violation of the following Disciplinary Rules charged in the Petition; DR1-102 (A), DR5-101 (A), DR5-105 (A)(B), DR6-101 (A), and DR9-102.

"It is the Court's judgment that Mr. Baker's actions as recounted earlier in the Court's findings of fact do constitute a violation of DR5-104 (A), which reads as follows:

'DR5-104, Limiting Business Relations with a Client.

(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented *after full disclosure.* [emphasis supplied]'

"The above disciplinary Rule sets forth the requirements an Attorney must comply with before entering into a business transaction with a client when they have 'differing interests therein'. Therefore, in ascertaining whether Mr. Baker should have followed the disclosure requirement of DR5-104 (A), it is necessary to first determine whether or not the Respondent and Mrs. Sheppard maintained 'differing interests' with respect to the Starflight loan. The Court is compelled to conclude that as a matter of law Respondent and Mrs. Sheppard had 'differing interests' in reference to the Starflight loan. As her testimony indicated, Mrs. Sheppard expected her attorney, Mr. Baker, to exercise his independent professional expertise and protect her interests with regard

to her loan to Starflight. Mrs. Sheppard reasonably expected that the note would be adequately secured, that the note would provide for interest upon default, and that her attorney, Mr. Baker, would take the necessary legal action to enforce the loan. The Respondent's position as a 10% stockholder, as Secretary, and as attorney for Starflight placed him in a compromising position whereby if he pursued the best interest of Starflight it would be to his client Mrs. Sheppard's detriment and vice-versa. If Mr. Baker were to zealously perform his duty as Mrs. Sheppard's attorney and were to sue Starflight to enforce the note this obviously would have been adverse to his interests as Starflight's attorney, Secretary and 10% stockholder. For these reasons it becomes apparent that Mr. Baker and Mrs. Sheppard had 'differing interests' in regard to the Starflight loan. According to DR5-104 (A) once it is established that Mr. Baker had 'differing interests' from that of his client, then he was precluded from entering into a business transaction, such as the Starflight loan, unless the client consented after a 'full disclosure'. It is the conclusion of the Court that the Respondent failed to make the necessary 'full disclosure' mandated in DR5-104 (A). Mr. Baker testified that he revealed to Mrs. Sheppard that he was 'involved' in Starflight and that he told her that he was Starflight's attorney. Even if the Court resolves all the evidence in a light most favorable to the Respondent and finds that he did tell Mrs. Sheppard that he was the company's attorney, it remains undenied that the Respondent failed to apprise his client of the fact that he was a 10% stockholder and Secretary of Starflight. For there to have been a 'full disclosure' within the mandate of DR5-104 (A) Mr. Baker should have revealed to Mrs. Sheppard his status as a 10% stockholder and Secretary of Starflight. Only then could Mrs. Sheppard have given a meaningful and informed consent to the Respondent's arranging the loan transaction with Starflight.

"It is the conclusion of the Court that the above described actions of the Respondent in regard to his client's loan to Starflight Corporation constituted a violation of Disciplinary Rule 5-104 (A).

"The Court furthermore concludes that the manner in which the Respondent handled the matters surrounding Mrs. Sheppard's loan to Starflight constitutes non-compliance with Disciplinary Rule 7-101 (A) which provides:

'DR 7-101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101 (B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.'

"The manner in which Mr. Baker drew Starflight's note, and his course of conduct after the note went into default on May 10, 1973, represents a failure to measure up to the duty imposed by DR7-101. As recounted earlier in the Court's findings of facts, Mrs. Sheppard had, prior to the Starflight loan, entrusted to Mr. Baker the responsibility of handling the legal matters of her divorce and settlement of the sale of her property. Consequently, as her testimony indicated Mrs. Sheppard held the reasonable expectation that the Respondent, acting as her attorney, would draft the Starflight note so as to protect her interests and would pursue all available means to obtain payment upon default. Mr. Baker's subsequent conduct manifests a clear abuse of this confidence which his client reposed in him as her attorney. As related earlier, the Respondent drafted the Starflight note so that upon default, except for a $500 penalty, the amount due Mrs. Sheppard would not be increased by the statutory interest rate nor by any other amount. Contrary to Mrs. Sheppard's expectation Mr. Baker never sought the most readily available legal means to enforce Starflight's loan obligation; namely, suing Starflight on the note. As a result

Starflight, of which the Respondent was Secretary, attorney, and ten percent owner, has never become obligated to pay Mrs. Sheppard any additional sums since it defaulted on the note on May 10, 1973. The Court cannot ignore the undisputed evidence demonstrating Mr. Baker's involvement in Starflight. Aware of these facts, the Court concludes that the Respondent's omission of a provision in the note for interest accruing upon default, and his failure to take effective action upon default constituted an intentional failure on his part to protect his client by pursuing reasonably available legal means. Such conduct by an attorney is proscribed by DR7-101 (A) (1) and accordingly the Court must conclude that as a matter of law the Respondent did not comply with the duty set forth in the above stated Disciplinary Rule.

"SUMMARY

"The Court concludes this 9th day of February, 1979, that the above described conduct of the Respondent, Gerald Cullen Baker was a) in violation of Disciplinary Rule 5-104 (A) and b) was not in compliance with Disciplinary Rule 7-101 (A)."

Baker did not take exceptions to Judge Blackwell's findings. He urged that the appropriate sanction for his misconduct was a reprimand; Bar Counsel agreed.

We scheduled the matter for oral argument to determine the appropriate sanction to be imposed. After carefully considering Judge Blackwell's findings, which we accept and adopt, we think a reprimand is the proper sanction. We note that since the hearing in this case, Starflight's note to Mrs. Sheppard has been paid in full, with interest, by Baker. Baker will be required to pay the transcript costs of $194.45.

*It is so ordered.*