The **COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,**

v.

**Robert D. MERSHON, Respondent.**

No. 67620.

Supreme Court of Iowa.

March 17, 1982.

Lee H. Gaudineer, Des Moines, for complainant.

Frederick G. White, Waterloo, and L. Don Snow and Richard A. Knock of Mershon, Snow & Knock, Cedar Falls, for respondent.

McCORMICK, Justice.

This case involves review of a Grievance Commission report recommending that respondent be reprimanded for alleged ethical violations arising from a business transaction with a client. Because we find respondent's conduct violated the principle in DR5–104(A), we adopt the recommendation.

From our de novo review of the record, we find the facts as follows. Respondent is a Cedar Falls attorney. He began to do tax and property work for Leonard O. Miller, a farmer, in 1951. Miller owned 100 acres of farmland adjacent to a country club near the city. In 1969, when he was 68, Miller became interested in developing the land for residential purposes. He employed a landscape architect and R. O. Schenk, of

Schenk Engineering Company, to prepare a preliminary plat and market study.

When the preliminary work was completed, Miller brought Schenk to meet with respondent to discuss the project. Miller wished to proceed with the development but did not have sufficient funds to pay engineering costs. Schenk suggested that the three men form a corporation to which Miller would contribute the land, Schenk would contribute engineering services, and respondent would contribute legal services. They agreed the land was worth approximately $400 an acre. Schenk estimated engineering costs at $400 an acre, and he said legal costs were usually one half that amount.

After several conferences in early 1970, the three men formed a corporation, Union Township Development, Inc. Subsequently Miller conveyed the farmland to the corporation at a capitalized value of $12,500 and received 400 shares of stock. Schenk gave the corporation a $12,500 promissory note and also received 400 shares of stock. Respondent gave the corporation a $6,250 promissory note and received 200 shares of stock. The promissory notes were interest free and due at the discretion of the corporation. They were to represent the services to be rendered by Schenk and respondent.

Development plans were premised on the corporation's ability to obtain financing on the security of the farmland. As it turned out, the corporation was unable to borrow money unless the three individuals would guarantee the obligation personally. They refused to do so, and financing was never obtained.

The trio met at least annually to discuss the development, but when Miller died on December 31, 1978, at the age of 77, the project was still at a stalemate. Respondent believed the parties had an oral agreement that if development did not occur he and Schenk would relinquish their interests in the corporation to Miller. Three days after Miller's death, he transferred his stock to the corporation. He asked Schenk to do the same thing, but Schenk refused, denying any obligation to do so.

Respondent was nominated in Miller's will as executor of his estate. He served in that capacity until Miller's two daughters expressed dissatisfaction with his role in Miller's conveyance of the farmland to the corporation. He then resigned as executor. Consistent with his view, he showed Miller as owner of all corporate stock in the preliminary probate inventory. The farmland was appraised at $4,000 an acre.

Although respondent had expended $900 in out-of-pocket expenses for the corporation and performed legal services worth more than $6,000, he did not intend to seek payment. Schenk, however, maintained at the time of the grievance hearing that he still owned one half of the outstanding stock of the corporation.

■ The determinative question in our review is whether this evidence establishes a violation of the principle in DR5–104(A), which provides:

> A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

This provision was in the Iowa Code of Professional Responsibility For Lawyers when it was adopted on October 4, 1971. Because at least some of the material events in this case occurred before that date, we must first determine whether the principle was then in effect. We find that it was.

■ This court has recognized and applied the principle expressed in DR5–104(A) for many years. In *Healy v. Gray*, 184 Iowa 111, 118, 168 N.W. 222, 225 (1918), the court quoted the general rule under which all business transactions between an attorney and client are regarded with suspicion and disfavor:

> Transactions between attorney and client, as in all other cases where fiduciary relations exist between parties, one of

whom possesses superior knowledge and ability and the other is subject to his influence, are regarded with a scrutinizing and jealous eye by courts of equity, and will be set aside and the clients protected, whenever advantage has been taken of them through the influence or knowledge of the attorneys, possessed by reason of their peculiar relations.

Before making a contract with a client, an attorney must fully disclose every relevant fact and circumstance which the client should know to make an intelligent decision concerning the wisdom of entering the agreement. *Ryan Bros. v. Ashton*, 42 Iowa 365, 369 (1876). "To prevent abuse of such confidential relationship by removing temptation the law presumes such contracts to be fraudulent." *Reeder v. Lund*, 213 Iowa 300, 310, 236 N.W. 40, 44 (1931). "The burden is on the attorney to show that in any contract or settlement with his client or dealing with his client's property he has acted in fairness and good faith with a disclosure of all the facts." *Donaldson v. Eaton & Estes*, 136 Iowa 650, 656, 114 N.W. 19, 21 (1907).

Before the present ethics code was adopted, Iowa lawyers were subject to the Canons of Professional Ethics of the American Bar Association with one exception inapplicable here. *See* Court Rule 119, The Code 1966. Present DR5–104(A) merely restates the principle inherent in former ABA Canon 6. *See* R. Wise, *Legal Ethics* 72, n.5 (2nd ed. 1970).

As a mere restatement of a prior obligatory stricture on attorney conduct, DR5–104(A) expresses a principle that was fully binding upon Iowa lawyers at all material times in the present case. Thus we must determine whether the record shows it was violated.

■ In order to establish a violation of DR5–104(A) it is necessary to show that the lawyer and client had differing interests in the transaction, that the client expected the lawyer to exercise his professional judg-

ment for the protection of the client, and that the client consented to the transaction without full disclosure.

The definitions section of the code of professional responsibility defines "differing interests":

"Differing interests" include every interest that will adversely affect either the judgment or loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest.

Miller and Mershon plainly had differing interests in at least two aspects of the transaction. One was the issue of giving respondent a present interest in the corporation in anticipation of future legal services. The fee agreement was made during the existence of the attorney-client relationship and thus was subject to the general principles governing attorney-client transactions. *See Lawrence v. Tschirgi*, 244 Iowa 386, 389–90, 57 N.W.2d 46, 48 (1953). Because respondent's fee was tied to the amount of his stock in the corporation, he and Miller had differing interests concerning the extent of respondent's stock ownership. Another differing interest involved making respondent a debtor of the corporation to assure that the services would be performed. Because Miller's interest was aligned wholly with the corporation, he and respondent had differing interests with respect to respondent's promissory note. *See People v. Cameron*, 197 Colo. 330, 333, 595 P.2d 677, 679 (1979); *Attorney Grievance Commission v. Baker*, 285 Md. 45, 48–49, 399 A.2d 1347, 1349–50 (1979).

No dispute exists that Miller relied on respondent to exercise his professional judgment to protect him. One respect in which respondent did so was in preparing a written agreement to assure that Miller was reimbursed from the first profits of the corporation for the preincorporation expenses of preliminary studies. This, however, was the only agreement of the parties that was reduced to writing.

■ The fighting issue before the Commission was whether respondent made full

disclosure to Miller within the meaning of the Canon before Miller entered the transaction. If full disclosure means only that respondent made Miller fully aware of the nature and terms of the transaction, this requirement was satisfied. Nothing was hidden from Miller, and he was an active participant in the transaction. Full disclosure, however, means more than this.

Because of the fiduciary relationship which exists, the attorney

has the burden of showing that the transaction "was in all respects fairly and equitably conducted; that he fully and faithfully discharged all his duties to his client, not only by refraining from any misrepresentation or concealment of any material fact, but by active diligence to see that his client was fully informed of the nature and effect of the transaction proposed and of his own rights and interests in the subject matter involved, and by seeing to it that his client either has independent advice in the matter or else receives from the attorney such advice as the latter would have been expected to give had the transaction been one between his client and a stranger."

*Goldman v. Kane,* 3 Mass.App. 336, 341, 329 N.E.2d 770, 773 (1975) (citations omitted). *See Matter of Sedor,* 73 Wis.2d 629, 639, 693, 245 N.W.2d 895, 901 (1976) ("An informed consent requires disclosure which details not only the attorney's adverse interest, but also the effect it will have on the exercise of his professional judgment.").

Respondent acknowledges he did not suggest to Miller that he obtain independent advice. The record does not show he otherwise gave Miller the kind of advice Miller should have had if the transaction were with a stranger. *See Lawrence v. Tschirgi,* 244 Iowa at 394, 57 N.W.2d at 50 ("Plaintiff did not give his clients such advice regarding it as a disinterested attorney could be expected to give them or such advice as plaintiff should have given them if the proposed contract were between them and a strange attorney."). Respondent let Schenk

estimate the value of his legal services and thus the extent of respondent's stock ownership without any investigation to determine whether the estimate was accurate. Nor did he suggest to Miller that he make such investigation. If Schenk's estimate was generous, the effect may have been to chill respondent's scrutiny of the benchmark for the valuation, which was Schenk's valuation of his own services. Furthermore there was no discussion or investigation concerning the reasonableness or wisdom of tying respondent's fee for future services to a present twenty percent interest in the corporation. Respondent acknowledges that the arrangement was at least a technical violation of section 496A.18, The Code.

Nothing was done to assure that Miller would get his farm back if either Schenk or respondent did not perform or if the development should not be undertaken. Nothing was done to protect Miller or his estate in the event of the death of any of the parties. The promissory notes could hardly have been on more favorable terms to the debtors. The record does not show whether Miller was informed of the difficulty the corporation might have in enforcing respondent's obligation. So far as the record shows, Miller was not told of any possible effect of respondent's differing interests on the exercise of his professional judgment.

The Commission found respondent is forthright and honest and gained no profit from the transaction. The record confirms this finding. As the Commission also found, however, a violation of DR5–104(A) was nevertheless established. Respondent had three alternatives when the Schenk proposal was first made. The safest and perhaps best course would have been to refuse to participate personally in the transaction. *See* Annotated Code of Professional Responsibility 207 (American Bar Foundation ed. 1979). Alternatively, he could have recommended that Miller obtain independent advice. Finally, if Miller refused to seek independent advice or respondent did not recommend he do so, he could have

made the least desirable choice. He could have attempted to meet the high standard of disclosure outlined in this opinion.

Having chosen to enter the transaction without recommending that Miller obtain independent advice, respondent was obliged to make full disclosure. Because the record does not show full disclosure was made before Miller consented to the transaction, a violation of DR5–104(A) has been established. This is true even though respondent did not act dishonestly or make a profit on the transaction. *See Committee on Professional Ethics and Conduct v. Baker*, 269 N.W.2d 463, 465–66 (Iowa 1978).

In accordance with the Commission recommendation, we reprimand him for the violation.

ATTORNEY REPRIMANDED.

All Justices concur except McGIVERIN, J., who takes no part.