The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

William R. SCHOOLER, Jr., Respondent.

No. 91–1860.

Supreme Court of Iowa.

March 18, 1992.

Norman G. Bastemeyer and Charles Harrington of the Iowa State Bar Ass'n, Des Moines, for complainant.

William R. Schooler, Jr., Carlisle, pro se.

John R. Sandre, Des Moines, for respondent.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

Our Grievance Commission recommended the suspension of respondent William Schooler's license as a sanction for neglecting estate matters, misrepresenting the status of the estate, and failure to advise his clients of a possible conflict of interest in his dual role as executor and creditor of the estate. We suspend the respondent's license for a minimum of one year.

At the time of this complaint, the respondent practiced law in Carlisle, Iowa. He was also the executive vice president, general counsel, and a director of the Hartford–Carlisle Bank of Carlisle. He was, he testified, "essentially the owner" of the bank. He had an office in the bank from which he practiced law and performed his banking duties.

 The disciplinary complaint arose out of the respondent's representation of several related estates. The first, that of Marion D. Kleckner, was opened on November 16, 1982. The respondent was designated as the attorney for the estate. Kleckner's daughter, Betty Enderson, was appointed executor; but her husband Kenneth acted for her because of Betty's poor health.

The estate tax return was due on July 20, 1983, but it was not filed by the due date. In fact, as of February 1988, when another attorney took over the estate, the respondent still had not filed the return. He testified that he left it up to Kenneth Enderson to decide when to file the estate tax return, apparently failing to advise Enderson of the consequences. Failure to file, of course, is a federal offense. *See* 26 U.S.C. § 7201. The respondent testified that Enderson delayed payment of the tax because of pressing financial needs of the family. Despite the respondent's knowledge that the return had not been filed, he filed an application for allowance of fees, stating that the "estate is subject to federal estate taxes which have been filed."

On May 1, 1986, the clerk's office sent a notice of delinquency and, when the respondent failed to act within the required time, reported the delinquency as required by Iowa Code section 633.32 (1985) and Iowa Rule of Probate Procedure 5. On July 16, 1986, the respondent filed an application to remove the estate from the delinquency list, stating that he had settled all tax matters with the State of Iowa and that "all other items necessary to the closing of the estate had been done." These statements were not true.

On November 3, 1986, executor Betty Enderson died, her father's estate still not settled. An estate was opened for Betty,

and Kenneth was named as executor. The principal asset of Betty's estate was a seller's interest in a real estate contract, which was pledged as security to the bank for a loan to the Endersons. The bank, in fact, was the principal creditor in Betty's estate, which owed the bank over $100,000. Despite this apparent conflict, the respondent acted as attorney for Betty's estate. The record shows that the respondent did not explain to his clients the possible implications of this dual role or obtain specific consents from them. *See Committee on Professional Ethics & Conduct v. Hall,* 463 N.W.2d 30, 34–35 (Iowa 1990); *Committee on Professional Ethics & Conduct v. Postma,* 430 N.W.2d 387, 392 (Iowa 1988); *Committee on Professional Ethics & Conduct v. Mershon,* 316 N.W.2d 895, 899–900 (Iowa 1982).

Kenneth Enderson died on May 27, 1987, also indebted to the Carlisle bank. The bank had a security interest in many of Kenneth's assets, and the respondent was again hired as the attorney for the estate.

The respondent contends that his double role did not violate any express law or ethical rules and that the estates were not harmed. Any harm was suffered by the bank, not the estates, according to him. The commission nevertheless found that the respondent had violated rules of conduct and that actual damage is not required to establish a violation. *See Postma,* 430 N.W.2d at 392.

We do not hold that a lawyer may never act as a banker, but the respondent in this case clearly overstepped the bounds of propriety. He encouraged the executor of the Kleckner estate to borrow funds from his bank to pay expenses of the estate. As the commission noted, the respondent's role as shareholder and officer of the bank had interests adverse to those of the estates and, in view of the potential problem, he should have had consents from all parties affected. We agree.

The committee also found that the respondent was guilty of misconduct by misrepresenting the status of the proceedings in the Kleckner estate. Specifically, his statement on his application for fees that

the estate is subject to federal estate taxes "which have been filed," was not true. The respondent's application to remove the estate from the delinquency list stated that the estate would be closed on receipt of the Iowa inheritance tax receipt and that "all other items necessary to the closing of the estate have been done...." The respondent also prepared a final report that stated that all estate taxes had been paid and that all statutory requirements relating to taxes had been satisfied. These statements were not true.

■ In order to sustain violations of our disciplinary code, the committee must prove the violations by a convincing preponderance of the evidence: a greater weight of evidence than required in a civil trial but less than that required to sustain a criminal conviction. *See Committee on Professional Ethics & Conduct v. Hurd,* 375 N.W.2d 239, 246 (Iowa 1985). We believe the committee established that the respondent's acting as creditor and executor violated DR 5–101(A) ("Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.") and DR 5–105(B) ("A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted by DR 5–105(D).").

The misstatements as to the status of the estate violated DR 1–102(A)(4) ("A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."). It also violated DR 1–102(A)(5) ("A lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice.").

In determining the appropriate discipline to be imposed, we note that any financial harm to the estates was minimal. We understand that the penalties for failure to file a timely estate tax return have been waived. This, of course, does not excuse

any of the delays or misrepresentations that occurred. The respondent, according to his testimony, voluntarily ceased the practice of law in 1989.

We believe that based primarily on Mr. Schooler's failure to divulge the dual nature of his representation, his intentional misstatements to the court regarding the status of estate proceedings, and his tacit approval of his client's decision to violate state and federal tax filing laws, a suspension is justified.

Accordingly, it is ordered that Mr. Schooler be suspended from the practice of law indefinitely, with no possibility of reinstatement for the period of one year from the filing of this opinion. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12. Any application for reinstatement shall be governed by Iowa Supreme Court Rule 118.13. Costs of this proceeding are taxed to the respondent.

LICENSE SUSPENDED.