The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Carl B. ZIMMERMAN, Respondent.

No. 84–457.

Supreme Court of Iowa.

Aug. 22, 1984.

Rehearing Denied Sept. 17, 1984.

George H. Capps, Des Moines, for complainant.

William Ball and Max E. Kirk of Ball, Kirk & Holm, P.C., Waterloo, for respondent.

SCHULTZ, Justice.

This attorney disciplinary proceeding was instigated by a disgruntled civil litigant who complained to the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (Committee) about the actions of respondent attorney Carl V. Zimmerman in persuading a district court judge to ex parte set aside several default judgments held by the litigant. These judgments, entered against the general partners of three limited partnerships and a corporation, were set aside on the strength of Zimmerman's assertions to the court that the partnerships' bankruptcy rendered the judgments void ab initio. The Committee filed a formal complaint with the Grievance Commission of the Supreme Court of Iowa (Commission) alleging that Zimmerman was guilty of misrepresentation for failing or neglecting to inform the judge that the corporation owned the property encumbered by plaintiff's judgment lien and was uninvolved in the bankruptcy. More specifically, the Committee charged respondent with violating:

 a. DR 1–102(A)(1), (4) and (5);

 b. EC 7–27;

 c. DR 7–102(A)(3);

 d. All of the Iowa Code of Professional Responsibility for Lawyers;

 e. Chapter 610.14(3) of the *Code of Iowa;*

f. Chapter 610.15 of the *Code of Iowa;*

g. Chapter 610.23 of the *Code of Iowa;*

h. Chapter 610.24 of the *Code of Iowa;*

By and large these regulations prohibit an attorney from engaging in deception, misrepresentation, concealment of evidence, or any other conduct that is detrimental to the fair administration of justice. We only consider the charges of misrepresentation.

Although the Commission found respondent's want of disclosure constituted misrepresentation, it determined Zimmerman did not intentionally or affirmatively seek to mislead the court, and thus concluded the complaint should be dismissed since mere neglect, oversight or lack of trial experience are not punishable violations under our decision in *Committee on Professional Ethics and Conduct v. Bitter,* 279 N.W.2d 521, 526–27 (Iowa 1979). The sole dissenter took a somewhat different view:

> After listening to all of the testimony and considering this matter, I feel that Mr. Zimmerman in all likelihood had sufficient education and knowledge to either: (1) during the extensive review of the case that he said he did would have found out that the entity in bankruptcy and titleholder were not one and the same, or (2) would have realized that the inner relationship of the different entities involved were so muddled that any prudent lawyer would have discussed the file openly and totally with the judge prior to obtaining an order. I therefore believe he intentionally misrepresented the facts to the judge in order to expedite the closing.

When, as here, a member of the Commission dissents from the majority report, the matter stands for final disposition in this court. Iowa Sup.Ct.R. 118.9. Our review is de novo and though we give respectful consideration to the Commission's findings and recommendations, we are not bound by them. *Committee on Professional Ethics and Conduct v. Rabe,* 284 N.W.2d 234, 235 (Iowa 1979).

The activities triggering the complaint sprang from an action filed in Black Hawk County in December of 1978. The plaintiff sought damages for unpaid wages by alleging he was an employee of three limited partnerships and a corporation. Plaintiff did not sue the partnerships because he was aware of their bankruptcy proceeding. The defendants were the corporation and five individuals who were alleged to be general partners of the partnerships. In January and February of 1979, plaintiff obtained default judgments against each defendant for $4030.74 and costs.

The managing general partner of the bankrupt partnerships was also the incorporator and apparently the sole stockholder of the defendant corporation which was formed for the purpose of obtaining loans for the partnership's investment property. In November of 1978, approximately one month before the action was filed in district court, a federal bankruptcy judge appointed a receiver for the assets of the three limited partnerships and issued a temporary injunction against all persons, including creditors, from interfering with any assets of the bankrupts by judicial action or otherwise. This injunction never mentioned the corporation nor the general partners. According to the record, the receiver for the bankrupt partnerships did not take part in the district court action or seek to set aside the judgments against the partners and the corporation.

In July 1979, approximately five months after the entry of a default judgment against it, the corporation sold its last remaining asset, a tract of real estate which was the subject of a foreclosure action. The mortgagee, a lending institution, had agreed to the sale and subsequent refinancing by the buyer. An abstract examination disclosed the plaintiff's judgment lien against the corporation. Plaintiff refused to release his lien without a settlement.

Unable to close the real estate transaction, the corporation finally enlisted Zimmerman's aid in removing the judgment lien on the real estate. The lending institution would not agree to escrow funds to protect it from the judgment and insisted the lien be satisfied or removed.

Zimmerman checked the court rule, conducted some research, and then sought advice from another attorney, a specialist in bankruptcy law. Zimmerman did not advise the specialist that the titleholder to the property in question was the corporation and that the corporation was not involved in bankruptcy proceedings. The other attorney was familiar with the bankruptcy of the partnership and knew of the judgment against the general partners. At that time, the attorney believed the partnerships' bankruptcy also protected the general partners and orally opined that the judgment was void ab initio because of the bankruptcy injunction. At the disciplinary hearing, this attorney testified that had he known the corporation was the titleholder and also a judgment debtor, he would not have rendered the opinion he did. He also testified that later research led him to believe that he was incorrect in saying the general partners were protected by the partnership's bankruptcy.

Faced with a sale deadline and an impending vacation of his own, Zimmerman approached the judge of the district court attending orders on one or two occasions. The record shows he filed a motion to set aside the default judgment, alleging that plaintiff perpetrated extrinsic fraud against the court by obtaining the default judgments when he knew of the bankruptcy proceedings. Although the court file indicated the corporation's status as a defendant and judgment debtor, the motion never set out any facts concerning corporation immunity from suit. Without a formal hearing, the judge signed a prepared ruling setting aside the judgments against all defendants, expunging the record, and ordering that all liens arising from the judgment were satisfied and discharged. The ruling was conditioned, however, on payment into the court of $1515.37, the net wages due the plaintiff employee. It also made provision for a hearing on plaintiff's right to the proceeds. In a memorandum to the file dictated five weeks after the entry of default, the district court judge stated that the court did not inspect the file and relied on respondent to make a full disclosure of all of the circumstances.

The real estate transaction was then promptly closed, and after posting the required bond, the corporation received its money. Only then did the plaintiff and his attorney learn of the turn of events. Plaintiff promptly moved to set aside the court's ex parte order nullifying his judgments. After hearing, this motion was sustained, and the judgments were restored. Eventually the plaintiff recovered in full on his judgments.

Although we agree with the Commission's finding that the judge relied on Zimmerman's representations instead of examining the district court file, we reject its conclusion that respondent's conduct, in the circumstances of this case, was mere neglect, oversight, or a result of trial inexperience within the meaning of our language in *Bitter*. Unlike the Commission, we find Zimmerman's actions to be much more harmful and culpable than the conduct in *Bitter* where the misrepresentation resulting from negligence or oversight did not cause the actual delay. Here, Zimmerman sought to set aside facially valid default judgments ex parte and denied the plaintiff notice and opportunity to respond. This muddled situation called for a contested hearing with notice or the posting of sufficient funds with the clerk to secure the entire judgment. Instead, the court set aside the judgments based upon Zimmerman's assurance that they were invalid and despite his admitted lack of experience or expertise in bankruptcy. At the very least, his own recognized inadequacies made it imperative that he fully disclose all facts tangentially relevant and material to the judge's decision in setting aside the judgments. In the circumstances of this case, Zimmerman's want of disclosure evinces indefensible irresponsibility and a conscious disregard for the rights of a litigant convincing us his conduct constituted misrepresentation within the meaning of our disciplinary rules.

We are not impressed with respondent's defense of ignorance. Throughout the pro-

ceedings Zimmerman has maintained he cannot be charged with misrepresentation unless he was consciously aware of the significance of what he failed to disclose. Stated otherwise, ignorance of the legal significance of the withheld facts negates intent, and without a finding of intent, he cannot be guilty of misrepresentation.[1] We do not agree with his position.

 As far as the public is concerned, such irresponsibility results in the same unfortunate consequences as intentional misconduct. We have a duty to protect the public from harm and to uphold the integrity of and public confidence in our judicial system. *Committee on Professional Ethics and Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981). If all individuals are presumed to know the law and cannot use ignorance as a defense, respondent, a trained professional with the basic skills and tools to acquaint himself with the legal significance of the facts, cannot insulate himself from censure simply by claiming ignorance. This is particularly true when Zimmerman, although aware he was inexperienced in this area, held himself out as informed on the matter and obtained a court order on the strength of this representation. Far from excusing his conduct, his ignorance of bankruptcy heightened his duty to fully inform the court about every fact within his personal knowledge bearing on the case. In this regard, Zimmerman certainly cannot also claim he was ignorant of the basic facts underlying the default judgments.

Quite the contrary, respondent was well acquainted with the status of the judgment debtors. He had drafted the original limited partnership and the articles of incorporation. He frequently examined abstracts of title for both the partnerships and the managing partner. He was specifically employed to remove the lien from land owned by the corporation. While he advised the judge that the bankruptcy injunc-

tion invalidated the judgments as to the general partners, he did not discuss its effect on the corporation. His claim that matters concerning the corporation were not relevant is an untenable explanation in light of the fact the corporation was a separate legal entity from the partnership, the titleholder of the real estate encumbered by plaintiff's judgment lien, and was not involved in the bankruptcy proceedings. His failure to advise the court of critical facts within his personal knowledge at accelerated ex parte proceedings cannot be excused by claiming ignorance and supports a finding respondent willfully and irresponsibly misled the court.

 The respondent has practiced law over twenty-five years. The record does not indicate any other problems of an ethical nature. We conclude that respondent's actions in persuading a district court judge to ex parte set aside these default judgments violated DR1–102(A)(4) and (5) and warrant the suspension we are about to impose.

We order that the respondent's license to practice law in the courts of this state as that term is defined in Iowa Supreme Court Rule 118.12 be suspended indefinitely, effective September 1, 1984, with no possibility of reinstatement for ninety days after said date. Upon any application for reinstatement, respondent shall also prove that he has not performed any of such services during the suspension period.

LICENSE SUSPENDED.

---

**1.** This is a rather surprising defense in view of Canon 6, EC 6–3 and DR 6–101 requiring an attorney to act competently and to forego handling those matters he knows or should know he is not qualified to handle. Although we do

not discipline a lawyer on unspecified charges, we may consider these duties in assessing the gravity of respondent's actions and their consequences.