COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

**Daniel J. JAY, Respondent.**

No. 88–0831.

Supreme Court of Iowa.

Oct. 19, 1988.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery

& O'Brien, P.C., Des Moines, for complainant.

Mark W. Bennett of Babich, Bennett & Nickerson, Des Moines, for respondent.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

The sole issue before us in this attorney disciplinary proceeding is to determine the appropriate sanction to be imposed upon respondent, Daniel J. Jay. The facts in this case are not disputed, primarily due to Jay's voluntary disclosure of his ethical transgressions, and his full cooperation with the committee.

Jay admits he knowingly and willfully failed to timely file his federal and state income tax returns for 1985 and 1986. The 1985 returns were untimely filed in November, 1987. A tax refund was due him in the amount of $1135 state taxes overpaid and a refund of $1435 federal taxes overpaid. Jay's 1986 returns were also untimely filed in November 1987. These returns resulted in a tax refund from the state of $832 for overpaid taxes and a tax refund from the federal government of $933 for overpaid taxes. Jay also admits he certified on his 1987 client security questionnaire that he had filed his federal and state income tax returns for 1985 when he had not. These actions constituted unethical and unprofessional conduct in violation of EC 1–5 and DR 1–102(A)(1), (4), (5), (6) of the Iowa Code of Professional Responsibility for Lawyers. See, e.g., Committee on Professional Ethics & Conduct v. Houser, 423 N.W.2d 1, 2 (Iowa 1988); Committee on Professional Ethics & Conduct v. Cook, 409 N.W.2d 469, 470–71 (Iowa 1987).

Jay's actions came to the attention of the committee when he voluntarily disclosed them in a letter dated November 20, 1987, sent to the ethics counsel of the committee. Prior to sending this letter, Jay filed all of his delinquent returns. It was undisputed and the Grievance Commission found that Jay had fully cooperated with the Committee on Professional Ethics and Conduct of the Iowa State Bar Association and with the Grievance Commission in the investigation and processing of this matter. The Commission recommended Jay's license to practice law be suspended for three months.

Daniel Jay is a thirty-four-year-old lawyer practicing law in Centerville, Iowa. He conducts a typical "general county seat practice." During and since law school days he has been active in politics. First elected to the Iowa House of Representatives in 1978, he has continued to serve there. Presently, he is chairman of the Judiciary and Law Enforcement Committee. Witnesses before the Commission testified to Jay's excellent reputation for honesty, truthfulness and trustworthiness.

The Commission found that the case is governed by our decision in Cook, where we ordered a suspension for three months. Specifically, the Commission concluded that the period of suspension should be substantially reduced by reason of Jay's voluntary disclosure and full cooperation throughout. While agreeing that the facts justify a license suspension, Jay distinguishes his conduct as less culpable than that found in Cook and other similar cases. He believes a suspension of forty-five or sixty days is more appropriate.

We give respectful consideration to the Commission's recommendations but are not bound by them. Committee on Professional Ethics & Conduct v. Belay, 420 N.W.2d 783, 784 (Iowa 1988); Committee on Professional Ethics & Conduct v. Zimmerman, 354 N.W.2d 235, 236 (Iowa 1984). In determining the discipline to be imposed, we independently consider the facts of each case. Committee on Professional Ethics & Conduct v. Piazza, 389 N.W.2d 382, 383 (Iowa 1986). We have, however, found it useful to note the discipline we have imposed in similar cases. See Committee on Professional Ethics & Conduct v. Davison, 414 N.W.2d 97, 99–100 (Iowa 1987). This enables us to ensure the discipline we impose is commensurate with our past decisions.

As of July 1984, we had many times repeated the principles which apply to disci-

plinary cases based on failure to file income tax returns on time. In those cases we imposed license suspensions ranging from three months to three years. *See Committee on Professional Ethics & Conduct v. Crawford,* 351 N.W.2d 530, 531–32 (Iowa 1984). Since then we have had several more cases. They are collated in *Committee on Professional Ethics and Conduct v. Davison,* 414 N.W.2d 97, 99–100 (Iowa 1987).

Recently we decided *Committee on Professional Ethics and Conduct v. Summa,* 416 N.W.2d 690 (Iowa 1987), in which a one-year suspension was ordered. There, the respondent failed to file federal tax returns for four years and state returns for two. In *Committee on Professional Ethics and Conduct v. Belay,* 420 N.W.2d 783 (Iowa 1988), respondent filed his 1984 state tax return eighteen-months late and filed his 1984 federal, 1985 state and 1985 federal returns in January 1987. Belay responded to the client security questionnaire by asserting his constitutional right against self-incrimination which prompted an investigation by the ethics committee. We suspended his license to practice law for not less than six months. *Committee on Professional Ethics & Conduct v. Ramey,* 424 N.W.2d 435 (Iowa 1988) involved the failure to timely file a 1982 federal tax return and state tax returns for three years. The delinquent tax returns reflected an overpayment of income tax. A false certification that the 1982 income tax returns were filed had also been filed with the Client Security Commission. Our order suspended the license to practice for not less than six months.

In *Cook* we suspended the attorney's license to practice law for a minimum of three months. Cook's 1981 federal return was filed five months late despite an extension received. His 1982 federal return was filed three days beyond the extended time. The 1983 federal return was filed on August 20, five days after the extended deadline. The 1984 federal return was filed two months after the extended time had expired. Cook's 1983 state return was filed eighteen months late. The Ethics Committee contended that Cook engaged in an

almost routine failure to timely file tax returns. We described it as a wholesale failure to comply with the income tax laws. Additionally, a false certificate that tax returns were filed was given to the Client Security Commission.

In each case we tailor the sanction to the particular facts revealed. *Committee on Professional Ethics & Conduct v. Borchart,* 392 N.W.2d 491, 492 (Iowa 1986). Cook voluntarily informed the Committee that he had failed to timely file tax returns. The favorable impact of Cook's disclosure is, however, weakened by the Committee's assertion that Cook's bankruptcy action made it certain that the failure to file tax returns would soon be known to the Ethics Committee. Nevertheless, we said

> We think respondent's voluntary disclosure is of considerable significance. Although it will not serve to justify or excuse his misconduct it does weigh heavily in our selection of a sanction. This is because it indicates both an acknowledgment of his failures and a willingness to face up to them.
>
> Respondent's misconduct demands a suspension. But we conclude that the period of suspension should be substantially reduced by reason of his voluntary disclosure.

*Cook,* 409 N.W.2d at 471.

We emphasized this point in *Belay* where the suspension was fixed at not less than six months.

> But unlike the respondent in *Committee on Professional Ethics and Conduct v. Cook,* 409 N.W.2d 469, 471 (Iowa 1987) (three-month suspension for failure to file and one false certification), Belay cannot be credited with reporting his misconduct to the committee before the investigation began.

*Belay,* 420 N.W.2d at 785.

We are mindful of the trauma experienced by a lawyer in deciding to expose personal failures for the world to see. In his letter to the ethics counsel informing the Committee of his tax problem, Daniel Jay prefaced his statement by saying it was the most difficult letter he had ever had to write. He did so fully realizing the consequences. Jay testified

I understand that the public holds the members of our profession in a very unique light and we must be held to a higher standard than other professions or the public in general. For that reason, I understand that I must accept the personal and professional consequences of the decision of my peers.

We have said that in an age of computerized records, a tax evader faces the certainty of discovery and the inevitability of a severe professional sanction. *See Committee on Professional Ethics & Conduct v. Jones,* 368 N.W.2d 157, 157 (Iowa 1985). Yet, inevitability does not advance imminence. We have seen how one failure to file and false statements regarding it can multiply to several. In *Borchart* respondent even prepared corresponding state returns, but did not file them. "He knew his license would be suspended upon discovery, but decided to postpone the day of reckoning as long as possible: He answered falsely in 1982, 1983 and 1984." *See Committee on Professional Ethics & Conduct v. Borchart,* 392 N.W.2d 491, 492 (Iowa 1986).

This is the kind of cancerous growth of a problem whose consequences can be arrested only by immediate treatment. We feel it is important that sanctions reflect our desire that an isolated instance not develop into a pattern of conduct willfully adopted by a lawyer from a mistaken conclusion that no reasonable alternative exists. Accordingly, we believe that Jay's voluntary disclosure is of considerable import.

We suspend Daniel J. Jay's license to practice law in the courts of this state for an indefinite period of time, with no possibility of reinstatement for sixty days from the date of the filing of this opinion. This suspension shall apply to all facets of the practice of law, Iowa Sup.Ct.R. 118.12, and any application for reinstatement shall be governed by rule 118.13.

Costs are taxed to respondent pursuant to Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.