**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION,** Appellee,

v.

**Carl B. ZIMMERMAN, Appellant.**

No. 90–1131.

Supreme Court of Iowa.

Jan. 23, 1991.

Max E. Kirk and David W. Stamp of Ball, Kirk, Holm & Nardini, P.C., Waterloo, for appellant.

Charles L. Harrington, Des Moines, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This lawyer disciplinary case arises out of charges by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (Committee) that attorney Carl Zimmerman violated ethical standards by seeking excessive and duplicative fees for work on a conservatorship in which his wife served as conservator. The matter was heard by a division of the Grievance Commission which recommended that Zimmerman's conduct warranted a six-month suspension. On Zimmerman's appeal from the Commission's report, our review is de novo. Iowa S.Ct.R. 118.11. We agree with the substance of the Commission's findings and concur in its recommended sanction.

I. Attorney Carl Zimmerman has been licensed to practice law in this state since 1956. He practices principally in the fields of real property, probate, tax, and estate planning. In 1984, Zimmerman's license was suspended for ninety days upon a finding that he misled a judge with respect to the status of valid default judgments, in violation of DR 1–102(A)(4) and (5). *See Committee on Professional Ethics & Conduct v. Zimmerman,* 354 N.W.2d 235, 237–38 (Iowa 1984).

The current case arises out of a fee application submitted by Zimmerman in connection with the Earl H. White conservatorship. The conservatorship was established at Zimmerman's urging in April 1986 after he discovered that White's financial affairs were in disarray. White, then ap-

proaching his ninetieth birthday, was Zimmerman's former neighbor and longtime client. Acting under a power of attorney previously executed, Zimmerman consolidated over $300,000 of White's investments into one account at a local brokerage firm. He then decided that court supervision of these investments was in order.

White signed a voluntary petition for conservatorship that named Zimmerman's wife, Lou Anne Zimmerman, as conservator. Lou Anne Zimmerman, whose training is in education, had no previous experience in investments or as a fiduciary. When Zimmerman presented the petition to the court for approval, he specifically alerted the court to his relationship with the proposed fiduciary. Judge Joseph Keefe, who presided over the matter, apparently questioned Zimmerman and satisfied himself that there was no impropriety in the appointment so long as it met with the ward's wishes.

Activity in the conservatorship during the first year was complicated by the size of the estate (estimated between $350,000 and $500,000), White's temporary removal to a mental health facility followed by his permanent placement at the nursing home, the need to hire full-time companions to supervise him, and the inventory and sale of White's personal belongings. Clearly Zimmerman took the lead insofar as responsibility for these details is concerned. For the period April 1986 to April 1987, Zimmerman submitted a fee application requesting only $440 for the conservator's services (billed at $15 per hour) but claimed $6745 for his own services at the rate of $80 per hour. The fees were approved without question by the court.

The dispute centers on the application submitted by Zimmerman for the second year of the conservatorship, May 1, 1987 to April 30, 1988. For this reporting period, Zimmerman changed the basis upon which he calculated the fees. For the conservator's fee, he departed from the previous year's hourly rate and adopted a "percentage of assets" method of calculation to justify a claim of $3595.12. The services performed by the conservator were not otherwise itemized. For his own fee for legal services, Zimmerman submitted an itemized statement showing 89.75 hours of work at $90 per hour for a total of $8077.50. In addition, Zimmerman sought the court's ratification of a $300 fee for income tax preparation taken earlier without court order.

Judge Dennis Damsgaard, presiding at "order hour" when Zimmerman presented these applications, made a cursory review of the itemized statement and immediately noted that some services for which Zimmerman sought legal fees appeared to be actions which would customarily be performed by the conservator and included in her fee. For example, Zimmerman's billable time included attending Mr. White's birthday party, conferences regarding clothing and toiletry needs, a trip to a funeral home to "view and discuss prices of caskets, vaults, etc.," depositing checks, and writing personal letters on the ward's behalf. Concerned about possible duplication in the fee applications for the conservator and her attorney, the judge set the matter for hearing.

On the day of the hearing, Zimmerman filed amended fee applications in which he reduced his own claim for services to $3350, and slightly reduced the conservator's fee to $3421.45. The amended statement for legal fees showed 19.5 hours for Zimmerman's legal representation at $90 per hour and 39.85 hours of paralegal services at $40 per hour. Zimmerman testified that he had "misprepared" the earlier application by failing to omit from his own bill those services logically covered in the "percentage of assets" fee submitted on behalf of the conservator. He also acknowledged that there had been less activity with respect to the conservatorship than in the previous year.

Judge William Klotzbach presided at the hearing. He questioned Mrs. Zimmerman at length about her services as guardian and conservator. She testified about the ward's care at the nursing facility but displayed no familiarity whatsoever with respect to the ward's other financial obligations or investments. It was apparent

that the bulk of the bookkeeping was handled by Zimmerman's office staff and that Mr. White's investments were handled by Zimmerman and a broker. Mrs. Zimmerman also appeared discomforted by her role in the matter. At the close of the hearing, she tendered her resignation as conservator.

Based on the evidence presented at the hearing, Judge Klotzbach concluded that Mrs. Zimmerman had not substantially performed the duties contemplated by a conservator under the probate code. The court also noted that the conservator had failed to itemize her services as required by Iowa Code section 633.200 (1989). The sum of $250 was ordered as her fee and the court directed that her resignation be on file within the week.

As for Zimmerman's legal fees, the court concluded that it had no authority to ratify the $300 previously taken by him for tax preparation without court authorization. The court then concluded that Zimmerman was entitled to the sum of $2670.75 in legal fees for the one-year period.

Finally, the court directed that a transcript of the proceedings be furnished to the Committee on Professional Ethics and Conduct "for any action they deem appropriate." Further facts will be detailed as they pertain to the matters on appeal.

II. The Committee charged Zimmerman with violating the following canons of the Iowa Code of Professional Responsibility: EC 1–5, DR 1–102(A)(1), (4), (5) and (6) (requiring a lawyer to maintain high standards of professional conduct and prohibiting conduct that involves misrepresentation, prejudices the administration of justice, or adversely reflects on fitness to practice law); EC 2–8, EC 2–19, DR 2–106(A), (B)(3) (requiring that lawyers subordinate every consideration of personal advantage to the client's interest and welfare, and prohibiting the collection of fees that are unreasonable or in excess of fees customarily charged in the locality for similar legal services); and DR 5–101(A), EC 9–2, EC 9–6 (prohibiting a lawyer from accepting employment that may be adversely affected by the lawyer's own financial and personal interests, thereby avoiding even the appearance of impropriety and upholding the integrity of the legal profession).

Following hearing, the Grievance Commission found by a convincing preponderance of the evidence that the Committee had proved its charges against Zimmerman. *See Committee on Professional Ethics & Conduct v. Freed*, 341 N.W.2d 757, 759 (Iowa 1983) (Committee bears burden of proving ethical misconduct by requisite quantum of proof). Specifically, it found Zimmerman guilty of ethical misconduct by (1) securing the appointment of his wife as conservator at a time when the ward's judgment in such matters was impaired; (2) requesting conservator's fees for services Zimmerman knew had not been performed by the conservator, and seeking legal fees for services that were either nonlegal or duplicated those submitted by the conservator; and (3) failing to itemize the fiduciary's services in accordance with Iowa Code section 633.200. Because our review is de novo, we give these findings respectful consideration but we are not bound by them. *Zimmerman*, 354 N.W.2d at 236.

On appeal, Zimmerman contends that the appointment of his wife as conservator was proper. He further argues that the Commission's findings are not supported by the record and that it was error for the Commission to premise its findings of ethical misconduct on the mere application for a fee award that was subsequently amended and eventually reduced by the court. We shall consider the arguments in turn.

A. *Conservator's fees.* Given the relationship between Zimmerman and his wife, the Commission viewed Lou Anne Zimmerman's appointment as conservator with considerable skepticism. It noted the fact that (1) she was neither a close nor trusted friend of the ward, (2) she replaced the corporate executor named in White's will only after his removal to a nursing home, and (3) because it was the ward's confused mental state that led to the opening of the conservatorship in the first place, the voluntariness of the appointment was suspect.

At the outset, we agree with Zimmerman's contention that Lou Anne Zimmerman's appointment as conservator, standing alone, would not give rise to an ethical violation. The Committee concedes as much. Like the Commission, however, we are also convinced that when Zimmerman departed from the practice of securing fees for his wife's duties as conservator on an hourly basis and sought remuneration instead based on the value of assets over which she exercised neither interest nor control, he put his own financial considerations ahead of his client's welfare in violation of EC 2–8.

Zimmerman attempts to explain away this misconduct by pointing to the fact that many corporate fiduciaries regularly employ this method of compensation. For two reasons we find this argument unpersuasive. First, the probate code requires that compensation for all fiduciaries other than personal representatives shall be fixed by the court based on "an itemized claim or report made and filed setting forth what such services consist of during the period of time they continue to act in such capacities." Iowa Code § 633.200. Whether other fiduciaries comply with this statute is essentially irrelevant insofar as Zimmerman's conduct is concerned. There certainly is no statutory support for the utter lack of justification for fees revealed by the present record.

Second, as noted by the district court, any percentage fee charged by a responsible corporate or individual fiduciary should reflect the reasonable value of the services rendered, and liability assumed, with respect to active management of assets. As one commentator has noted:

The compensation allowed should be commensurate with the size and importance of the ward's estate and the amount of work required to give it proper attention, but should at the same time be sufficiently moderate so as not to create an unfair burden or unduly deplete the trust. The amount of the allowance is largely within the discretion of the trial court.

3 W. Phalen & S. Bright, *McCarty Iowa Probate* § 2840, at 576 (3d ed. 1988). We have echoed the same sentiment in our own cases. *See, e.g., In re Larkins' Will,* 243 Iowa 322, 326, 51 N.W.2d 396, 398 (1952). Here, the evidence clearly reveals that the conservator took no responsibility for the $368,000 in assets upon which Zimmerman calculated her fee.

In the end, Zimmerman's wrongdoing does not stem from the questionable practice of seeking the appointment of his wife as conservator, but from knowingly preparing and submitting to the court an application for her fees that bore no rational relationship to the services rendered. The impropriety of that act was only magnified by the fact that he simultaneously submitted an application for his own fees that, on its face, demonstrated duplicative expense to the conservatorship. We find ample support in this record for the Commission's finding that Zimmerman misled the court in violation of DR 1–102(A)(4) and violated DR 2–106(A)'s prohibition against charging clients excessive fees.

B. *Lawyer's fees.* The Committee also claims that Zimmerman overbilled the conservatorship for his own legal fees. Its argument rests on two facts that Zimmerman does not dispute: (1) his original application for legal fees duplicated nonlegal administrative fees he simultaneously sought on behalf of the conservator; and (2) his original statement requested fees for 89.75 hours of legal service billed at $90 per hour when, in fact, he devoted only 19.5 hours to legal matters while his legal assistant devoted 39.85 hours to bookkeeping and report preparation. The record also reveals that, after questioning by Judge Damsgaard, Zimmerman corrected these "mistakes" by way of an amended fee application. To his credit, Zimmerman thoroughly documented the services rendered on behalf of the conservatorship and no one suggests that the legal needs of the ward were not fully met.

Two possible scenarios emerge from these facts. Zimmerman claims that he innocently forgot that he changed the method of charging for the conservator's

fees, thereby negligently overlooking the fact that his own bill requested nearly $5000 for conservator's services he had performed. He further asserts that he misunderstood the way to segregate lawyer time from assistant's time and—in his confusion—asked $90 per hour for all of it. The Committee, on the other hand, submits that Zimmerman deliberately set out to fleece his elderly client in an ex parte proceeding and would have done so but for the intervention of an alert and inquiring judge. The Commission found the Committee's interpretation of the facts more credible under this record. So do we.

Carl Zimmerman is not a novice in preparing probate fee applications. He has practiced in the field over thirty years. He testified that over the past ten years he has been the attorney in approximately twenty-six other conservatorships. His own secretary vouched for his practice of carefully reviewing fee applications and making changes if necessary. Given this proof of experience and customary attention to detail, Zimmerman's defense of ignorance, neglect, and confusion rings hollow.

Equally telling is Judge Damsgaard's recollection of Zimmerman's response to the judge's concern over the apparent fee duplication and his decision to set the matter for hearing. Zimmerman professed no mistake at that time. In the judge's words, Zimmerman merely "talked about possible recision of the order and working the matter out." Experience tells us that Zimmerman's response bespeaks a lawyer caught violating a known standard rather than one surprised to learn of a negligent oversight.

Zimmerman's professed confusion over how to bill for his legal assistant's time is similarly unconvincing. The record reveals that he regarded one of his staff members as a legal assistant, rather than a legal secretary. He testified that because of her training and experience, she could skillfully perform administrative tasks independently on behalf of the conservatorship without his direct supervision. He paid this paralegal between $5 and $6 per hour. Nevertheless, because the probate clerk once told him that the attorney's fee should reflect the overhead for secretarial help, Zimmerman charged the conservatorship $90 per hour for all the services performed by the legal assistant as though they had been performed by him. Judge Klotzbach testified before the Commission that, in his opinion, $90 per hour is an excessive fee to be charged for the expense of a legal assistant.

Although Zimmerman broke out the legal assistant's time on his amended application and charged only $40 per hour for her services, we are not persuaded that the initial application was the product of misunderstanding. Even if it were, such conduct is inexcusable. *Cf. Committee on Professional Ethics & Conduct v. Baudino*, 452 N.W.2d 455, 460 (Iowa 1990) (attorney's confusion regarding income tax deadlines is no excuse for failure to timely file because misunderstanding of law is not reasonable). The Committee has proven by a convincing preponderance of the evidence that Zimmerman sought fees that were excessive and beyond those customarily charged for like services in the locality in violation of DR 2–106(A) and (B)(3).

C. *Taking unauthorized fees.* The Committee also charged, and the Commission found, that Zimmerman took $300 from conservatorship funds for income tax preparation in advance of authorization by the court in both 1986 and 1987. The practice is clearly prohibited and will subject a lawyer to discipline. *See Committee on Professional Ethics & Conduct v. Coddington*, 360 N.W.2d 823, 825 (Iowa 1985) (citing numerous code provisions for rule that "fees in probate matters are to be received only after their authorization by the court"); *accord Committee on Professional Ethics & Conduct v. Winkel*, 415 N.W.2d 601, 603 (Iowa 1987). The Commission found that Zimmerman's disregard for this rule was negligent but did not meet the test of a willful violation of the Code of Professional Responsibility. On our de novo review, we regard this additional "mistake" with greater skepticism. We find it further proof that Zimmerman, as charged by the Committee, has "engaged in conduct that adversely reflects on his

fitness to practice law." Iowa Code of Professional Responsibility DR 1–102(A)(6).

III. Zimmerman argues that even if he sought excessive fees, no disciplinary sanction is warranted. He submits that the record merely shows the supervisory function of the court at work. In Zimmerman's view, he submitted fee applications which thoroughly documented the services rendered on behalf of the ward. The court, in its discretion, disagreed with him about the value of those services and substantially reduced the award. He and his wife have benefited only by receipt of fees judicially authorized. In essence, argues Zimmerman, "no harm—no foul."

Like the Grievance Commission, we view the record quite differently. Zimmerman knowingly misled the court and attempted, in the process, to obtain for himself and his wife fees that were unjustified, excessive, and unauthorized. Moreover, this is not the first time Zimmerman has been found guilty of willfully and irresponsibly misleading the court. *See Zimmerman,* 354 N.W.2d at 238. We have repeatedly held that prior disciplinary action bears on the decision in a subsequent case against the same lawyer. *Committee on Professional Ethics & Conduct v. Shepherd,* 431 N.W.2d 342, 344 (Iowa 1988); *Committee on Professional Ethics & Conduct v. Stienstra,* 395 N.W.2d 638, 640 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Klein,* 394 N.W.2d 358, 361 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Hurd,* 360 N.W.2d 96, 105–06 (Iowa 1984).

The Commission, composed of lawyers and laypersons, heard Zimmerman's excuses firsthand and found them wanting. It recommended a six-month suspension. We think such suspension is fully justified under the present record.

We order Carl Zimmerman's license to practice law in this state suspended indefinitely with no possibility of reinstatement for six months. Upon any application for reinstatement, Zimmerman shall bear the burden of proving that he has not practiced law during the period of suspension and that he has in all respects complied with

the requirements of Iowa Supreme Court Rules 118.12 and .13. Costs are taxed to the appellant. *See* Iowa Sup.Ct.R. 118.22.

LICENSE SUSPENDED.