The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Appellee,

v.

William S. MORRIS, Appellant.

No. 92-328.

Supreme Court of Iowa.

Sept. 23, 1992.

William S. Morris, pro se.

Don C. Nickerson, Des Moines, for appellant.

Charles L. Harrington, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, NEUMAN and ANDREASEN, JJ.

McGIVERIN, Chief Judge.

Respondent William S. Morris appeals from a report of the Grievance Commission in an attorney disciplinary proceeding wherein the commission recommended suspension of Morris' license to practice law. We agree and conclude the suspension should be for six months.

I. *Background facts and proceedings.* In January 1990, Georgia Craig was a citizen of Canada residing in West Des Moines. Craig was seeking employment in a Des Moines area jewelry store. She had applied for employment at Zale's Jewelers, and had also filed a nonimmigrant visa petition with the Immigration and Naturalization Service (INS) in order that she could work in the United States as a temporary worker. *See* 8 U.S.C. § 1101(a)(15)(H)(i).

After her petition was denied, she sought legal assistance by consulting the yellow pages in the Des Moines telephone book. She located the advertisement of respondent William S. Morris, a Des Moines attorney licensed to practice law in the courts of this state. Morris has been licensed since 1983, except for a period of three months in 1988 when his license was suspended for failure to file income tax returns and answer truthfully attorney discipline and client security commission questionnaires. *See Committee on Professional Ethics & Conduct v. Morris,* 427 N.W.2d 458 (Iowa 1988).

Morris' advertisement in the Des Moines telephone book listed immigration law as one of his practice areas; the advertisement listed a total of nine areas of law comprising Morris' practice. Craig retained Morris to represent her in appealing the denial of her petition to the commissioner of the INS and in obtaining temporary work authorization. She paid Morris retainers totalling $1,000.

Morris filed an appeal on behalf of Craig. This appeal was denied by the INS commissioner in February 1990. Morris thereafter assisted Craig in obtaining a position with Joseph's Jewelers (Joseph's) in Des Moines. Craig, with attorney Morris' knowledge, began working at Joseph's in April 1990. Roughly one month later, Morris filed an application for alien employment certification for Craig with the Job Service of Iowa.

Such an application consists of two parts, one of which must be completed by an alien such as Craig, the other of which must be completed by a sponsoring employer such as Joseph's. The completion of the application is required as a preliminary step before the alien may acquire the right to work in the United States. *See, e.g., K.R.K. Irvine, Inc. v. Landon,* 699 F.2d 1006 (9th Cir.1983). When an attorney such as Morris is involved in the application process, the Job Service deals exclusively with that attorney in ensuring compliance with application procedures. Although Craig was working for Joseph's while the application was being processed by the Job Service, the mere fact that such an application is pending does not give an alien the right to work in this country as a temporary worker.

William J. Baum, manager of Joseph's, prepared and delivered to Morris all papers Morris submitted to him for purposes of Craig's application. Baum testified in his deposition, which was considered by the Grievance Commission, that he received no indication from Morris that Craig's employment with Joseph's was in any way wrongful.

Our review of Craig's file with the Job Service reveals that, over a period of months, there were delays in the processing of Craig's application. This may have been due in part because of delays in mail delivery, but it was also due to the forms not being completed properly and, by attorney Morris' own admission, because of Morris' failure to timely complete other aspects of the application.

During the delays in the processing of her application, Craig apparently contacted Morris on numerous occasions and inquired about its progress. According to her testimony, Morris assured her that work on the application was in progress, that she had temporary work authorization, and that only a backlog of paper work with the Job Service was delaying the processing of her application. However, the record indicates that Morris never satisfactorily completed the application for certification.

In late November 1990, federal officers arrested Craig at Joseph's for illegally working in the United States. She was taken to the federal building in Des Moines and placed in a cell. Baum notified Morris of Craig's arrest, and Morris immediately went to the federal building. Several hours later, Craig was released from custody. Joseph's thereafter became involved in legal proceedings with the immigration authorities regarding Joseph's employment of Craig.

Deportation proceedings were thereafter commenced against Craig, and a deportation hearing was set for February 26, 1991, in Omaha, Nebraska. Craig testified that Morris told her it was too expensive for him to accompany her to the hearing and that he would instruct her what to do when she arrived in Omaha. The proceedings were delayed, however, and ultimately commenced on March 26, 1991; Morris was present at this hearing. In lieu of deportation, an immigration judge ordered that Craig be allowed to voluntarily depart from the United States by May 31, 1991. This order appears to be based upon a stipulation between Morris and INS chief counsel which allowed for Craig's voluntary departure from the United States. After the hearing, Craig terminated Morris' representation of her; Craig left the country on May 28.

At some point during these events, Craig contacted the Committee on Professional Ethics and Conduct (committee). The committee thereafter contacted Morris regarding his conduct in representing Craig. In a letter responding to the committee, Morris represented to the committee that Craig had in fact received certification for alien employment. He later conceded that this statement was not true.

The committee thereafter filed a complaint against Morris regarding his conduct in representing Craig. The complaint alleged that Morris' actions violated various disciplinary rules and ethical considerations of the Iowa Code of Professional Responsibility for Lawyers. At a subsequent hearing before the Grievance Commission (commission), Morris conceded his errors in representing Craig, acknowledging his limited experience in immigration law and stated that his representation of Craig was "one of those situations where I had gotten into an area without sufficient preparation." However, Morris also asserted that "I have tried my best to clear that up." He claimed that Craig is eligible to reenter the United States, that there is no adverse information in her INS file, and that she is eligible "for an entry visa for the purpose of applying for permanent resident alien status."

Morris also conceded at the hearing that his advertisement in the Des Moines telephone book was not in compliance with our then-existing disciplinary rules, and that he had not fulfilled any continuing legal education requirements needed to entitle him to advertise immigration law as one of his practice areas.

After the hearing, the commission recommended that Morris' license to practice law be suspended for eighteen months. *See* Iowa Sup.Ct.R. 118.9. Morris appealed. *See* Iowa Sup.Ct.R. 118.11.

In attorney disciplinary matters, we review the record de novo. *See Committee on Professional Ethics & Conduct v. Zimmerman,* 465 N.W.2d 288, 290 (Iowa 1991). Although we give the findings of the commission respectful consideration, we are not bound by them. *Id.* The committee

has the burden of proving by a convincing preponderance of the evidence that Morris has violated the Code of Professional Responsibility as charged. *Id.* Violations of both disciplinary rules and ethical considerations are grounds for disciplinary sanctions. *See Committee on Professional Ethics & Conduct v. Conzett,* 476 N.W.2d 43, 44 (Iowa 1991).

II. *Violations of code of professional responsibility.*

A. On this appeal, attorney Morris admits that his advertisement in the yellow pages of the Des Moines telephone book, which listed a total of nine areas of law comprising his practice, was not in compliance with DR 2–105(A)(2). This disciplinary rule provides that an attorney who limits his practice to certain areas of law may not list more than three such areas in an advertisement or communication allowed by the rules. *See* DR 2–101(B). Additionally, at the hearing before the commission, Morris admitted that he had not completed annually at least ten hours of accredited continuing legal education in immigration law, which is required before an attorney may list in an advertisement an area of limited practice of law. *See* DR 2–105(A)(4)(b).

Our review of the advertisement also reveals that it does not comply with DR 2–105(A)(3) (listing of areas of law practice must be preceded by words "practice limited to ..." or "practicing primarily in ...") and DR 2–105(B) (if advertisement uses term "general practice," no reference to limited areas of practice is permitted).

Morris also admits that his conduct in representing Craig violated DR 6–101(A)(1), which prohibits a lawyer from handling a legal matter "which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it." He also admits that his conduct violated DR 6–101(A)(2), which prohibits a lawyer from handling "a legal matter without preparation adequate in the circumstances." Based upon our de novo review of the record, we agree with the committee that Morris also violated EC

6–1 and EC 6–4, which contain essentially the same proscriptions as the above disciplinary rules.

Due to Morris' failure to satisfactorily complete Craig's application for employment certification, we conclude that Morris also violated DR 6–101(A)(3) (lawyer shall not neglect a legal matter entrusted to the lawyer). Furthermore, despite Morris' contentions that he did not engage in any intentional misconduct, we agree with the committee that Morris' conduct in representing Craig violated DR 7–101(A), which provides, among other things, that a lawyer shall not intentionally fail to seek "the lawful objectives of his client through reasonably available means." This is because we have repeatedly held that the neglect of a client's matters may constitute a violation of DR 7–101(A) without a showing of a specific intent to injure the client; instead, we have construed the term "intentionally" in DR 7–101(A) to mean "a conscious disregard" of the responsibilities assumed on behalf of a client. *See, e.g., Committee on Professional Ethics & Conduct v. Gill*, 479 N.W.2d 303, 305 (Iowa 1991); *Committee on Professional Ethics & Conduct v. Gardalen*, 414 N.W.2d 124, 128 (Iowa 1987).

We believe the record before us clearly demonstrates that Morris consciously disregarded the responsibilities he had assumed on behalf of Craig. The series of delays which occurred in the processing of Craig's application for employment certification, which extended over a period of months, was occasioned in large part by Morris' failure to complete certain aspects of the application. Indeed, Morris failed to complete the application despite repeated notices from Job Service that the application remained incomplete.

Finally, our review of the record reveals that Morris violated DR 1–102(A)(4), which prohibits an attorney from engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." Although an alien such as Craig has no right to work in this country merely because an application for employment certification is pending, Morris nevertheless assisted Craig in obtaining employment with Joseph's before his initial attempt to file the application with Job Service, and he told Craig that she could continue to work even after her arrest. Furthermore, after the committee initially contacted Morris, he represented in a letter to the committee that Craig had in fact received certification for alien employment, a statement he later conceded to be untrue. *See* EC 1–4.

B. Although Morris admits that he violated DR 2–105(A)(2), DR 2–105(A)(4)(b), DR 6–101(A)(1) and DR 6–101(A)(2), he nevertheless asserts that the committee's recommendation that his license be suspended for eighteen months is unwarranted. Rather, he argues that he should only be reprimanded for his conduct. We believe a suspension is appropriate here.

We have on several previous occasions suspended attorneys' licenses to practice law where those attorneys neglected the affairs of their clients. The suspensions have ranged from three to six months. *See, e.g., Committee on Professional Ethics & Conduct v. Horn*, 480 N.W.2d 861 (Iowa 1992) (attorney's delay in pursuing client's suit and falsely representing status of case to client warranted six month suspension); *Gill*, 479 N.W.2d at 307 (neglect of clients' cases and failure to notify clients of developments warranted three month suspension); *Conzett*, 476 N.W.2d at 46 (inaction in pursuing claim and failure to communicate with client warranted four month suspension); *Committee on Professional Ethics & Conduct v. Wenger*, 454 N.W.2d 367 (Iowa 1990) (neglect of legal matters and failure to respond to committee warranted three month suspension). *See generally Committee on Professional Ethics & Conduct v. Havercamp*, 442 N.W.2d 67 (Iowa 1989) (six month suspension); *Committee on Professional Ethics & Conduct v. Haney*, 435 N.W.2d 742 (Iowa 1989) (three month suspension); *Committee on Professional Ethics & Conduct v. Minette*, 424 N.W.2d 459 (Iowa 1988) (three month suspension); *Committee on Professional Ethics & Conduct v.*

*Oleson,* 422 N.W.2d 176 (Iowa 1988) (six month suspension).[1]

In order to maintain consistency with our prior decisions, we conclude that Morris' violations require more than a reprimand. More specifically, we conclude that suspension is the more appropriate sanction if we are to further the goals of the Code of Professional Responsibility: to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering. *See Gill,* 479 N.W.2d at 306.

C. We have considered the other contentions made by Morris and find them without merit or unnecessary to discuss.

III. *Disposition.* Based upon the foregoing authorities and the record in this case, we conclude that suspension of Morris' license to practice law is the more appropriate sanction for his violations of the Code of Professional Responsibility. However, we do not agree with the commission's recommendation that Morris' violations warrant an eighteen-month suspension. Although Morris was suspended in a previous unrelated incident and violated several ethical considerations and disciplinary rules in the present case, we do not believe that his conduct was so egregious that it requires such a lengthy suspension.

Accordingly, we suspend Morris' license to practice law indefinitely with no possibility of reinstatement for six months from the date of this opinion. *See* Iowa Sup. Ct.R. 118.12. Costs should be taxed to Morris pursuant to Iowa supreme court rule 118.22.

LICENSE SUSPENDED.

---

1. Apparently, we have never had occasion to consider what constitutes an appropriate sanction for violations of our disciplinary rules governing lawyer advertising in print media. *Cf.*

*Committee on Professional Ethics & Conduct v. Humphrey,* 377 N.W.2d 643 (Iowa 1985) (involving electronic media advertising).