**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Appellee,**

v.

**James C. WHERRY, Appellant.**

No. 97–777.

Supreme Court of Iowa.

Oct. 22, 1997.

James C. Wherry, Davenport, pro se.

Norman Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

In *Bates v. State Bar of Arizona,* 433 U.S. 350, 382–83, 97 S.Ct. 2691, 2708–09, 53 L.Ed.2d 810, 835 (1977), states were denied authority to prohibit advertising by practicing lawyers. The question in this appeal, as we see it, comes down to whether, having submitted to the rule in *Bates,* states can adopt and enforce lawyer advertising rules to assure that, in addition to being reasonable, the advertising is forthright and accurate.

Attorney James C. Wherry was admitted to practice in 1991 and maintains a general practice in Davenport. Wherry has consistently advertised his practice in the areas of bankruptcy, domestic relations, wills, and social security appeals. He has never filed a report showing his eligibility to indicate areas of practice with the commission on continuing legal education as required by DR 2–105(A)(4) of the Iowa code of professional responsibility for lawyers.[1] We have said a lawyer who advertises a practice in a specific field without compliance with DR 2–105(A)(4) acts unethically. *Committee on Prof'l Ethics & Conduct v. Morris,* 490 N.W.2d 806, 808 (Iowa 1992).

Wherry's advertisements in various telephone directories in violation of this rule prompted the present complaint by the board of professional ethics and conduct. Wherry testified he has continuing legal education hours and experience required to report eligibility for bankruptcy, but has taken no steps to do so. For the other areas he advertises, he had not met the practice time or the continuing legal education requirements. He had drawn only one or two wills before publishing an advertisement referring to wills. He had not obtained any continuing legal education in the areas of domestic relations, wills, or social security.

Wherry's noncompliance has been no mere oversight. He seems determined to confront our advertising rules; the violations involved here follow a prior proceeding in which he was privately admonished by the board in 1993 for similar noncompliance.

■ I. As a preliminary claim, Wherry contends DR 2–105(A)(4) is permissive, not mandatory. He concedes the rule states that an attorney must comply with the eligibility requirements before advertising. But he contrasts this with the introductory language in DR 2–105(A)(2) which he says is made to only apply to lawyers who in fact "limit" practice to certain fields of the law.

DR 2–105(A)(2), before listing the areas of practice appropriate for specialty advertising, does refer to lawyers who limit practice to those areas or who wish to practice primarily in them. But no language in the rule provides the escape Wherry suggests because the rule is subject to the general authority for all lawyer advertising which allows informational but prohibits solely promotional advertisements. To distinguish between informational and promotional advertising, DR 2–101(C) then provides:

Content (Informational). The following information shall be presumed to be informational and not solely promotional:

. . . .

(2) Fields of practice, limitation of practice or specialization, but only to the extent permitted by DR 2–105.

Compliance with DR 2–105(A)(4) is clearly required for all Iowa lawyers who advertise specific fields of practice. The requirement

---

1. DR 2–105(A)(4) provides that a lawyer who wishes to advertise an area of practice must first comply with certain steps:

Prior to communication of a description or indication of practice permitted by DR 2–105(A)(2) [listing various areas of practice], a lawyer shall report the lawyer's compliance with the following eligibility requirements each year in the written report required to be submitted to the Commission on Continuing Legal Education:

(a) The lawyer must have devoted the greater of 200 hours or twenty percent of the lawyer's time spent in actual law practice to each separate indicated field of practice for each of the last two calendar years; and (b) The lawyer must have completed at least ten hours of accredited Continuing Legal Education courses of study in each separate indicated field of practice during the preceding calendar year.

is not confined to those lawyers who would limit their practice as Wherry suggests.

■ II. Until two decades ago, state supreme courts were free to prohibit lawyer advertising. In *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770–71, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346, 363–64 (1976), the United States Supreme Court for the first time extended first amendment protection to commercial speech. The following year *Bates* held that lawyer advertising is commercial speech and entitled to limited first amendment protection. *Bates*, 433 U.S. at 383, 97 S.Ct. at 2709, 53 L.Ed.2d at 835.

The limited protection for commercial speech is less than afforded other forms of expression such as political speech. *Board of Trustees v. Fox*, 492 U.S. 469, 477, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388, 402 (1989). Commercial speech by members of the learned professions, because it poses special problems, may justify more restrictions than would be appropriate for other commercial speech. *In re R.M.J.*, 455 U.S. 191, 202, 102 S.Ct. 929, 937, 71 L.Ed.2d 64, 73 (1982). Advertising by the legal profession may warrant even more restrictions than advertising by those of other learned professions. *Edenfield v. Fane*, 507 U.S. 761, 775, 113 S.Ct. 1792, 1802–03, 123 L.Ed.2d 543, 558 (1993).

The subject of commercial free speech rights for lawyers wishing to advertise was recently analyzed in *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995), where it was said:

[W]e engage in "intermediate" scrutiny of restrictions on commercial speech, analyzing them under the framework set forth in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Under *Central Hudson*, the government may freely regulate commercial speech that concerns unlawful activity or is misleading. Commercial speech that falls into neither of these categories, like the advertising at issue here, may be regulated if the government satisfies a test consisting of three related prongs: first, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation must be "narrowly drawn."

*Florida Bar*, 515 U.S. at 624, 115 S.Ct. at 2376, 132 L.Ed.2d at 549 (citations omitted).

We think our advertising rule easily satisfies the three-prong test. Iowa government, particularly its judicial branch, has a clear responsibility to protect the public interest in *informed* selection of legal representation. False claims of expertise are a real danger to those who need and are searching for legal services. *Morris*, 490 N.W.2d at 808 (unqualified lawyer listing field of practice resulted in harm to client relying on the advertisement); *see also Bates*, 433 U.S. at 377, 97 S.Ct. at 2705, 53 L.Ed.2d at 831 (recognizing substantial state interest in fostering rational, intelligent, and voluntary decision making in determining the need for legal services and selecting a lawyer).

DR 2–105(A)(4) is our carefully considered attempt to protect the public interest in making this informed decision. It does so by requiring a minimum of specialized training by those who pose in their advertising as specialists in a listed field. If we are to be criticized for our efforts, it might well be for drawing our requirements too narrowly— that is, for not requiring much more training. The rule was designed by striking a balance between—on the one hand—the public's right to have a lawyer qualified in the field advertised and—on the other hand—in not making the training requirements more onerous than we felt absolutely necessary to justify the advertised claims. The rule offers only limited protection, but the limitation was thought necessary in order to satisfy the third prong of the *Central Hudson* test. We think the rule is a reasonable accommodation. *See Edenfield*, 507 U.S. at 767, 113 S.Ct. at 1798, 123 L.Ed.2d at 553 ("[L]aws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny.").

■ III. Wherry contends his advertisements are not misleading, that readers would not take them to mean he holds himself out as an expert, only that he performs professional services in the listed fields of practice. We are satisfied however that the advertisements were misleading because they would be taken by many readers as a claim of expertise in the listed fields. The record, as well as common sense, supports this view.

The record contains a summary of findings by the special master in the 1988 proceedings before our special commission which studied the subject and recommended approval of the challenged rule. A finding, which we accepted, was that "the public, in relying on listings of fields of practice, assumes that the attorney has additional education and expertise in the advertised field of practice." We adopted the rule in the hope it would bring a measure of reality to this assumption. Other courts have reached the same conclusion. *See Texans Against Censorship, Inc. v. State Bar of Texas,* 888 F.Supp. 1328, 1355 (E.D.Tex.1995) ("Listing areas of practice in an advertisement is likely to give consumers the impression that the lawyer specializes or focuses his particular practice in that area."), *aff'd sub nom., Texans v. State Bar of Texas,* 100 F.3d 953 (5th Cir.1996); *Lyon v. Alabama State Bar,* 451 So.2d 1367, 1373 (Ala. 1984) ("[I]t is reasonable to assume that some readers of an advertisement ... might believe that the attorney is a specialist or has greater expertise in performing the services advertised than attorneys who do not advertise."); *In re Goldin,* 689 S.W.2d 869, 870 (Tenn.1985) ("This court is convinced that many consumers and potential consumers of legal services in Tennessee believe that the mere listing, in advertisements, of specific areas of legal practice implies specialization, certification or expertise beyond that of the average lawyer.").

■ Those reading Wherry's advertisements implying experience in wills were misled because, at the time, he had only drawn one or two. He was similarly lacking in most of the fields mentioned in his advertisements. We thus conclude that advertising by an Iowa lawyer in fields of practice without the training required in accordance with our rule is misleading. We disagree with Wherry's contention that it is only *potentially* misleading. So saying, we do not suggest Wherry's view would make his case stronger because we are authorized to protect the public from advertisements that are only *potentially* misleading. *Committee on Prof'l Ethics & Conduct v. Humphrey,* 377 N.W.2d 643, 646 (Iowa 1985) (upholding restriction on electric media advertising noting that we claim "a substantial governmental interest in regulating what we perceive as a very real potential for abuse"), *appeal dismissed for want of substantial federal question,* 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986); *see Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 629, 105 S.Ct. 2265, 2270, 85 L.Ed.2d 652, 658–59 (1985) (affirmatively answering question of whether a state "may seek to prevent *potential* deception of the public by requiring attorneys to disclose in their advertising certain information regarding fee arrangements") (emphasis added); *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 454, 98 S.Ct. 1912, 1917, 56 L.Ed.2d 444, 452 (1978) ("The solicitation of business by a lawyer through direct, in-person communication with the prospective client has long been viewed ... as posing a significant *potential* harm to the prospective client.") (emphasis added).

Wherry relies on *In re R.M.J.,* a case we find not in point. *R.M.J.* involved an absolute ban on advertising fields of practice except by language specified by the rule. *In re R.M.J.,* 455 U.S. at 193, 102 S.Ct. at 932, 71 L.Ed.2d at 68. Our ban is not so absolute. Iowa lawyers, after meeting the eligibility requirements, are free to advertise within reasonable limits.

■ IV. Wherry also contends rule DR 2–105(A)(4) violates two clauses of the United States Constitution and is also preempted by federal bankruptcy law. First he asserts DR 2–105(A)(4) violates article I, section 8 of the United States Constitution (commerce clause). Because Wherry derives at least twenty percent of his employment from Illinois, he contends the regulation imposes a substantial and excessive burden on interstate commerce. Wherry does not show how his right to practice in interstate commerce

is affected by the challenged rule. He continues to practice in both Iowa and Illinois. Wherry can claim the rule restricts his ability to advertise but such a restriction does not impose a substantial and excessive burden on interstate commerce. He maintains his office in Iowa and eighty percent of his practice occurs here. We reject the challenge.

He further asserts the professional responsibility rule is preempted by "any of the various interstate telephone and communication acts." Wherry also claims the rule is an unconstitutional regulation of bankruptcy in violation of article I, section 8 of the United States Constitution. He cites no authority for either proposition. We find none and reject them both.

V. Wherry next asserts DR 2–105(A)(4) violates equal protection as guaranteed by the fourteenth amendment of the United States Constitution, an assertion we also reject.[2] The rule treats all lawyers the same, and all lawyers are subject to it. Equal protection requires only that those in similar positions be treated alike. *Bruns v. State,* 503 N.W.2d 607, 610 (Iowa 1993). In rejecting the argument on this basis, we do not imply that the equal protection analysis is even applicable when a commercial speech issue was justiciable in the claim, a matter we do not decide. *See United States v. Edge Broad. Co.,* 509 U.S. 418, 424, 113 S.Ct. 2696, 2702, 125 L.Ed.2d 345, 353 (1993); *Posadas de Puerto Rico Assocs. v. Tourism Co.,* 478 U.S. 328, 331, 337–38, 106 S.Ct. 2968, 2971, 2975, 92 L.Ed.2d 266, 274, 278 (1986).

VI. The closest question is with the recommended sanction—a public reprimand. In view of his prior private admonition for violating the same rule, Wherry's obdurate stand cannot be ascribed to a lack of experience. Neither can it be attributed alone to his desire to mount a constitutional test. A "safe harbor" was available to him. *Committee on Prof'l Ethics & Conduct v. Humphrey,* 355 N.W.2d 565, 569 (Iowa 1984) (safe harbor administrative system available for challenging advertising rules), *vacated on other grounds,* 472 U.S. 1004, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985).

With some reservations, we adopt the recommendation. For any future violations, we will take into consideration both Wherry's admonition and this reprimand.

James C. Wherry is reprimanded for his unprofessional conduct in violating DR 2–105(A)(4) of the Iowa code of professional responsibility for lawyers.

**ATTORNEY REPRIMANDED.**

---

2. Wherry seems to make a separate argument that the challenged rule lacks a rational basis. Although he did not so state, we assume the argument stands on his equal protection claim and falls with it.